The PEOPLE of the State of Colorado, Petitioner–Appellee,

In the Interest of A.H., a Child,

and

Concerning G.H., Respondent–Appellant.

No. 10CA0325.

Colorado Court of Appeals, Div. A.

May 26, 2011.

William Louis, County Attorney, Laura C. Rhyne, Deputy County Attorney, John Thirkell, Deputy County Attorney, Colorado Springs, Colorado, for Petitioner–Appellee.

Nancy Walker–Johnson, Guardian Ad Litem.

Davide C. Migliaccio, Colorado Springs, Colorado, for Respondent–Appellant.

Opinion by Judge LICHTENSTEIN.

In this dependency and neglect case, G.H., father of the child A.H., prevailed at his adjudicatory trials on the allegations of the petition. He appeals the January 2010 judgment of the trial court that declined to return the child to him, and instead awarded permanent legal custody of the child to interested party R.H. (paternal grandfather). We conclude that the trial court's subject matter and personal jurisdiction terminated when two juries considered whether the child was dependent and neglected and found in father's favor, leaving the court with no basis on which to exercise continuing jurisdiction over the case. Accordingly, we reverse the January 2010 judgment and remand with directions to dismiss the petition in dependency and neglect, vacate the order granting permanent custody of the child to the paternal grandfather, and discharge the child and father from any existing temporary orders. We also reverse the order denying father's request for appointed counsel and remand for retroactive appointment of counsel.

## I. Background

A.H. was removed from father's home on January 28, 2008, after the El Paso County Department of Human Services (DHS) received a report alleging that father was using drugs in the child's presence and was physically abusive toward her. At that time, mother did not have a separate place to live and was unable to provide for the child.

Mother entered a "no-fault" admission to DHS's petition in dependency and neglect, thus admitting, as stated in paragraph 3(e) of the petition, that the child was either "homeless, without proper care, or not domiciled with a parent, guardian, or legal custodian through no fault of such child's parent, guardian, or legal custodian." In addition, she admitted, in paragraph 4(a), that it had been reported that she was unable to provide a safe and stable environment for the child, thus placing the welfare of the child at risk.

On the basis of her admissions, the court adjudicated the child dependent and neglected.

Father denied that the child was dependent and neglected and requested that the issue be submitted to a jury. In May 2008, following a trial, a jury answered "no" to the following questions:

Question 1: Has the respondent father subjected the child, [A.H.], to mistreatment or abuse, or has [he] suffered or allowed another to mistreat or abuse the child without taking lawful means to stop such mistreatment or abuse and prevent it from recurring?

Question 2: Does the child, [A.H.], lack proper parental care through the actions or omissions of the respondent father?

Question 4: Has the respondent father failed or refused to provide proper or necessary subsistence, medical care, or any other care necessary to such child's health, guidance, or well being?

The jury did not answer the following question:

Question 3: Is the environment of the child, [A.H.], either injurious or likely to be injurious to her welfare as to the respondent father?

On July 16, 2008, a second jury trial was held to address the question left unanswered by the first. The second jury determined that the child's environment was neither injurious nor likely to be injurious "as to the respondent father."

DHS filed a motion for judgment notwithstanding the verdict. The court denied that motion.

Citing section 19–3–505(6), C.R.S.2010, father requested that the court vacate any previous orders against him and return the child to his custody. The court initially denied his motion, dismissed him as a party to the case, and advised him that if he wished to seek custody of the child, he should do so by pursuing an action for an allocation of parental responsibilities.

However, because the court had doubts as to whether mother's no-fault admission that the child was dependent and neglected was sufficient to sustain the court's continuing jurisdiction, the court ordered the parties to show cause why the child should not be returned to father. After reviewing their responses, the court determined in a written order issued on October 1, 2008, that it was appropriate to remove father from the case—while continuing the court's jurisdiction over mother and the child—because father had not had "legal custody" of the child prior to the intervention of DHS.

Father did not appeal the October 2008 order, but, after several months had elapsed, he filed a petition requesting that the supreme court grant him relief under C.A.R. 21. The supreme court determined that C.A.R. 21 relief was not appropriate because father had failed to pursue the expedited appeal process provided under C.A.R. 3.4, which would have provided him with an adequate legal remedy. *People in Interest of A.H.*, 216 P.3d 581, 585 (Colo.2009).

In October 2009, after the case was returned to the trial court, father moved to re-enter the case as an intervenor for the limited purpose of challenging the court's subject matter and personal jurisdiction. He also filed a separate motion requesting the court to vacate all orders entered after July 16, 2008, arguing that because both jury verdicts were in his favor, the court's subsequent orders were void for lack of jurisdiction. In this motion, he also requested that the court return custody of the child to him and dismiss the case.

In January 2010, the trial court denied father's motion and, based on a finding of the best interests of the child, granted permanent custody of the child to R.H., the child's paternal grandfather. Father appeals from that judgment, and argues that the trial court lacked subject matter and personal jurisdiction to enter it.

## II. Jurisdiction

Father contends that the trial court exceeded its jurisdiction when it (1) refused to return the child to him after two juries failed to find that the child was dependent and neglected, and (2) effectively forced him to re-enter the case as an intervenor to vindicate his parental rights. We agree.

## A. The Law

Under section 19–1–104(1)(b), C.R.S. 2010, a juvenile court has exclusive jurisdiction in proceedings concerning a child who is neglected and dependent "as set forth in section 19–3–102," C.R.S. 2010. "Under [this section], a juvenile court's subject matter jurisdiction in neglect or dependency cases is based on the *fact* of the child being neglected or dependent." *People in Interest of N.D.V.*, 224 P.3d 410, 414 (Colo.App.2009) (emphasis in original).

Section 19–3–102(1) provides that a child is neglected or dependent if:

(a) A parent, guardian, or legal custodian has abandoned the child or has subjected him or her to mistreatment or abuse or a parent, guardian, or legal custodian has suffered or allowed another to mistreat or abuse the child without taking lawful means to stop such mistreatment or abuse and prevent it from recurring;

(b) The child lacks proper parental care through the actions or omissions of the parent, guardian, or legal custodian;

(c) The child's environment is injurious to his or her welfare;

(d) A parent, guardian, or legal custodian fails or refuses to provide the child with proper or necessary subsistence, education, medical care, or any other care necessary for his or her health, guidance, or well-being;

(e) The child is homeless, without proper care, or not domiciled with his or her parent, guardian, or legal custodian through no fault of such parent, guardian, or legal custodian;

(f) The child has run away from home or is otherwise beyond the control of his or her parent, guardian, or legal custodian;

(g) The child tests positive at birth for either a schedule I controlled substance ... or a schedule II controlled substance ... unless the child tests positive for a schedule II controlled substance as a result of the mother's lawful intake of such substance as prescribed.

In addition, a child is neglected or dependent if, as provided by section 19–3–102(2):

(a) A parent, guardian, or legal custodian has subjected another child or children to an identifiable pattern of habitual abuse; and

(b) Such parent, guardian, or legal custodian has been the respondent in another proceeding ... in which a court has adjudicated another child to be neglected or dependent based upon allegations of sexual or physical abuse, or a court of competent jurisdiction has determined that such parent's, guardian's, or legal custodian's abuse or neglect has caused the death of another child; and

(c) The pattern of habitual abuse described in paragraph

(a) of subsection (2) and the type of abuse described in the allegations specified in paragraph (b) of subsection (2) pose a current threat to the child.

Under the statutory grant of exclusive jurisdiction, a juvenile court may issue temporary orders once a petition in dependency and neglect has been filed and notice has been given to the child's parent, guardian, or legal custodian. § 19–1–104(3)(a). However, the court's authority to issue temporary orders is limited to the period "prior to adjudication or disposition of [the child's] case." *Id.; see People in Interest of A.M.D.*, 648 P.2d 625, 639 (Colo.1982).

The purpose of an adjudicatory hearing is to determine whether the factual allegations in the dependency and neglect petition are supported by a preponderance of the evidence, and thus, whether the status of the subject child "warrants intrusive protective or corrective state intervention into the familial relationship." *People in Interest of A.M.*, 786 P.2d 476, 479 (Colo.App.1989); *see K.D. v. People*, 139 P.3d 695, 699 (Colo.2006) (an order of adjudication is not made as to each parent separately, but rather relates only to "the status of the child as of the date of the adjudication").

Each parent has the right to a jury determination as to whether the facts alleged in the petition have been proved. § 19–3–202, C.R.S.2010; *A.M.*, 786 P.2d at 479. Accordingly, "an admission by one parent to all or part of the allegations of a petition 'is not

necessarily dispositive of allegations disputed by [the] other named [parent].'" *People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App.2009) (quoting *A.M.*, 786 P.2d at 479).

■ Once an order adjudicating a child dependent and neglected has been entered, the court is vested with "extensive and flexible dispositional remedies," which may include placement of the child in the custody of relatives or other suitable persons. *A.M.D.*, 648 P.2d at 639; *see L.L. v. People*, 10 P.3d 1271, 1275 (Colo.2000).

If, however, the court finds that the allegations of a petition in dependency and neglect are not supported by a preponderance of the evidence, "the court shall order the petition dismissed and the child discharged from any detention or restriction previously ordered." § 19–3–505(6). The child's parents, guardian, or legal custodian are also to be discharged "from any restriction or other previous temporary order." *Id.*

## B. Application

After two juries found that the allegations of dependency and neglect were *not* proven by a preponderance of the evidence, the status of the child was not "dependent and neglected." *See K.D.*, 139 P.3d at 699. Hence, the court's limited jurisdiction over the case ended. *See N.D.V.*, 224 P.3d at 414 (a juvenile court's subject matter jurisdiction in neglect or dependency cases is based on the fact of the child being neglected or dependent); *see also A.M.D.*, 648 P.2d at 640 (acknowledging that a dependency or neglect proceeding "and the resulting adjudication" provide the jurisdictional bases for state intervention). At this point, the court was required to order the petition dismissed and the child and father discharged from any detention or restriction previously ordered. *See* § 19–3–505(6). In particular, the court here was required to discharge its authorization for removal of the child from father's care and its temporary custody orders, effectively returning the child to father's care.

We are not persuaded by the contentions of DHS and the child's guardian ad litem (the GAL) that despite the mandate of section 19–3–505(6), the court retained jurisdiction because (1) mother, not father, allegedly had legal custody of the child when the dependency and neglect proceedings began; and (2) mother's admission to the petition was sufficient to provide the court with continuing jurisdiction over the case.

### 1. Custody

■ DHS and the GAL contend that, after the jury verdicts, the trial court nonetheless retained jurisdiction in the dependency and neglect case to place custody of the child with someone other than father because mother, not father, had custody of the child when the dependency and neglect proceedings began. They contend either that a child support order, issued in a previous paternity action (El Paso County District Court no. 06JV 1150), implied that legal custody was with mother, or that mother's and father's respective conduct throughout the proceedings demonstrated that only mother acted as a custodial parent.

DHS and the GAL cite no authority, and we have found none, that would support a conclusion that their assertions as to custody have any bearing whatsoever on the issue here: whether the dependency and neglect court had jurisdiction to continue entering orders in the case after two juries determined that the child was not dependent and neglected. Accordingly, we decline to hold that the alleged prior custody status independently conferred continuing jurisdiction on the court. *See A.M.D.*, 648 P.2d at 640; *N.D.V.*, 224 P.3d at 414; *see also* § 19–3–505(6).

We note, however, that the prior paternity case is relevant to the extent that the court determined in that action that father was the biological parent. As the biological parent, father has a fundamental liberty interest in the care, custody, and control of the child. *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). This fundamental liberty interest "is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court." *L.L.*, 10 P.3d at 1275–76 (quoting *Troxel*, 530 U.S. at 66, 120 S.Ct. 2054).

"The fundamental liberty interest of natural parents in the care, custody, and manage-

ment of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *A.M.D.*, 648 P.2d at 632 (quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Because the parent has a fundamental right to maintain family relationships free from governmental interference, the government must meet certain due process and equal protection standards before these constitutional rights can be extinguished. *L.L.*, 10 P.3d at 1275.

Accordingly, the Children's Code provides statutory procedural protections to a parent to ensure he or she is afforded due process of law, including the independent right of each parent to a jury at an adjudicatory hearing of a dependency or neglect proceeding, *see* § 19–3–202, and the requirement that the government be held to a preponderance of the evidence standard of proof. *See* § 19–3–505(1).[1]

▮ Thus, once both juries found the allegations of dependency and neglect were *not* proven, the state could no longer intervene in father's fundamental right to the care, custody, and management of the child. *A.M.D.*, 648 P.2d at 632; *cf. L.L.*, 10 P.3d at 1277 (once allegations are proven under a preponderance of the evidence standard in a dependency and neglect case, a parent's due process rights are not violated when her right to custody is suspended).

### 2. Mother's No–Fault Admission

We also are not persuaded by the contention of DHS and the GAL that mother's no-fault admission was sufficient to continue the court's jurisdiction even after the juries' verdicts finding that the child was not dependent and neglected.

▮ As a preliminary matter, we reject the contention by DHS and the GAL that mother's admission to paragraph (3)(e) of the petition was not a "no-fault" admission. Paragraph 3(e) of the petition tracks section 19–3–102(1)(e), which provides that a child is

dependent or neglected where "[t]he child is homeless, without proper care, or not domiciled with his or her parent *through no fault of such parent.*" This section uniformly has been referred to in Colorado as the "no-fault" provision. *See M.S. v. People*, 812 P.2d 632, 634 (Colo.1991); *see also S.G.L.*, 214 P.3d at 586; *People in Interest of A.W.*, 74 P.3d 497, 498 (Colo.App.2003). We also are not persuaded that mother's admission to paragraph 4(a) changes the "no-fault" character of her admission. Paragraph 4(a) acknowledges only "[t]hat it has been reported [mother], is unable to" provide a safe and stable environment for the child. By admitting to paragraph 3(e) of the petition, mother denied responsibility for the condition of child's care or domicile; thus, her admission to paragraph 4(a) necessarily concerned the environment of the child while the child was in father's care.

▮ When mother entered a no-fault admission, the court retained jurisdiction over the dependency and neglect proceeding. *See* § 19–3–505(7). However, because father sought a jury trial on the issue of the child's status while in his care, mother's no-fault admission was sufficient only to support the court's continuing jurisdiction pending a determination by the jury whether the child was dependent and neglected. The law is well settled that where the finder of fact has determined that the child is not dependent and neglected while in a parent's care, the other parent's no-fault admission is legally insufficient to sustain the petition's averments concerning the child's status. *See A.M.*, 786 P.2d at 479 (mother's admission was legally insufficient to "sustain the petition's averments concerning the children's then existing status in the face of the father's denial"); *People in Interest of T.R.W.*, 759 P.2d 768, 771 (Colo.App.1988) (a non-custodial parent's no-fault admission was an insufficient basis to sustain a dependency adjudication when a jury found that the petition's allegations of abuse by the custodial parent were "not sustained" by evidence presented at an adjudicatory hearing); *see also People*

---

1. To the extent DHS contends that father did not perfect an appeal concerning a challenge to the constitutionality of the applicable provisions of the Children's Code, we note that father has never asserted that the statutes are unconstitutional.

*in Interest of P.D.S.*, 669 P.2d 627, 627–28 (Colo.App.1983) (a child is not adjudicated dependent and neglected "as to" each parent; rather, "an adjudication of dependency or neglect is a determination of the status of the child and no more").

Thus, notwithstanding mother's no-fault admission, once the juries found that the child was not dependent and neglected, section 19-3-505(6) required the court to dismiss the petition, thereby ending the court's jurisdiction over the case.

To hold otherwise would effectively nullify a parent's due process protections, including the right to a jury trial, as codified in section 19-3-202, and the accompanying right to require the state to prove the allegations against the parent by a preponderance of the evidence, as codified in section 19-3-505(1). *See Catholic Health Initiatives Colo. v. City of Pueblo*, 207 P.3d 812, 822 (Colo.2009) (the court has an obligation to avoid statutory interpretations that invoke constitutional deficiencies).

DHS asserts, nevertheless, that *People in Interest of U.S.*, 121 P.3d 326 (Colo.App. 2005), "ruled exactly on this issue" and holds to the contrary; therefore, DHS argues, the court retained jurisdiction over the case by virtue of mother's admission. DHS cites *U.S.* for the proposition that even if one parent must be dismissed from the proceeding because he or she prevailed at an adjudicatory trial, the other parent remains bound "for the entry of appropriate dispositional orders." This is not an accurate statement of the holding of *U.S.* Rather, the division in *U.S.* held that because the child was not adjudicated dependent and neglected as to mother, the trial court did not have authority over mother and was required to dismiss the petition with respect to her. *Id.* at 328. The division did not address the question whether the court retained jurisdiction over the child (or the other parent). *See N.D.V.*, 224 P.3d at 418 (rejecting the suggestion that the decision in *U.S.* discerned a clear legislative intent regarding subject matter jurisdiction).

We conclude that when the second jury returned a verdict in father's favor, the trial court's continuing jurisdiction ended, and the court was required to dismiss the

petition and discharge the child and father from any existing temporary orders. *See S.G.L.*, 214 P.3d at 586 (where the evidence was insufficient to support the district court's adjudication of dependency and neglect as to father, the case was remanded to the district court with instructions to dismiss the petition).

Consequently, we conclude that the court did not have jurisdiction, after the supreme court's remand, to entertain DHS's subsequent petition for allocation of parental responsibility or enter the January 2010 judgment awarding permanent legal custody of the child to the child's paternal grandfather. *Cf.* § 19-1-104(6) ("*When the juvenile court maintains jurisdiction* in a case involving a child who is dependent or neglected ... [upon a petition], the juvenile court may enter an order allocating parental responsibilities and addressing parenting time ....") (emphasis added).

### III. Right to Appointed Counsel

We also conclude that father, who has been determined to be indigent at the remand proceedings and on appeal, was entitled to appointed counsel at both stages of the proceedings.

A parent's right to counsel in dependency and neglect proceedings at the trial court level and on appeal are statutory in nature. *A.L.L. v. People*, 226 P.3d 1054, 1062 (Colo. 2010); *C.S. v. People*, 83 P.3d 627, 636 (Colo. 2004). The parent's statutory right to counsel in dependency and neglect proceedings is set forth in section 19-3-202(1), C.R.S.2010, which provides that a parent has "the right to be represented by counsel at every stage of the proceedings, and the right to seek the appointment of counsel if the party is unable financially to secure counsel on his [or her] own." The Children's Code requires that a parent be advised of this statutory right at his or her first appearance. *People in Interest of Z.P.*, 167 P.3d 211, 214 (Colo.App.2007).

To invoke the right to counsel, an indigent parent must timely request appointment of counsel. *People in Interest of T.D.*, 140 P.3d 205, 218 (Colo.App.2006).

Here, the trial court determined that father is indigent, and the record indicates that he timely requested the appointment of counsel at both the remand and appellate stages of the proceedings. Accordingly, we reverse the trial court's order declining to appoint counsel for father during the remand proceedings and on appeal.

## IV. Other Issues

Father contends that the trial court's grant of authority to the paternal grandfather to modify parenting time constituted an improper delegation of authority. Because of our resolution of this matter, we need not address this contention.

## V. Conclusion

The judgment is reversed. On remand, the court shall dismiss the petition, vacate the order granting permanent custody of the child to R.H., discharge the child and father from any existing temporary orders, and restore custody of the child to father.

The order declining to appoint counsel is reversed. On remand, the court shall retroactively appoint counsel for father, for the trial court proceedings following the supreme court's mandate, and for the proceedings on appeal.

Judge DAILEY and Judge J. JONES concur.

