2014 COA 182

The PEOPLE of the State of Colorado,
Petitioner–Appellee,

IN the INTEREST OF J.G., J.P.,
S.L., and C.L., Children,

and

Concerning M.L., Respondent–Appellant.

Court of Appeals No. 14CA0595

Colorado Court of Appeals,
Div. VI.

Announced December 31, 2014

Rocco F. Meconi, P.C., Rocco F. Meconi, Ca°non City, Colorado; Daniel B. Slater, Cañon City, Colorado, for Petitioner–Appellee.

Leon J. Dicks, Joanna K. Smith, Guardians Ad Litem

Davide C. Migliaccio, Colorado Springs, Colorado, for Respondent–Appellant.

Opinion by JUDGE ASHBY

¶ 1 In this dependency and neglect proceeding, M.L. (mother) appeals from the decree adjudicating J.G., J.P., S.L., and C.L. (the children) dependent and neglected, and from the subsequent dispositional order. We reverse and remand the case for further proceedings.

¶ 2 We clarify what is meant by the statement that a child is not adjudicated dependent and neglected "as to" a parent, see People in Interest of P.D.S., 669 P.2d 627 (Colo. App. 1983), and People v. Interest of T.T., 128 P.3d 328 (Colo. App. 2005); conclude that the jury was properly instructed to consider each child's status without assessing blame or fault on the part of a parent; but further conclude that by not requiring the jury to consider the children's status in relation to each parent, the jury instructions and special verdict form the trial court provided were erroneous.

## I. Background

¶ 3 In January 2014, the Fremont County Department of Human Services (FCDHS) learned that five-year-old S.L. had told her parents that her half-brother, eleven-year-old Jo.G., had touched her inappropriately while she was trying to sleep. Mother and B.L. (father L.) immediately reported the incident to police. Investigation revealed that Jo.G. had also touched the private parts of his full sister, eight-year-old J.P. Jo.G. was criminally charged, and temporarily returned to the family home until an appropriate placement could be found. Jo.G.'s half-brothers,

twelve-year-old J.G. and seven-year-old C.L., and the two girls were temporarily placed in the care of family members. When Jo.G. was moved to an offense specific foster home, his four siblings returned to the family home under the protective supervision of FCDHS.

¶ 4 FCDHS then filed a petition in dependency and neglect alleging that all five children were dependent and neglected. Mother admitted that Jo.G. was a dependent and neglected child, later stating that she had done so because she was not able to then meet his needs and she did not believe that she could safely have him in her home with the other four children "until we can figure out what's going on with him." She denied that the other four children were dependent and neglected and requested a jury trial on the issue of their adjudication.

¶ 5 Less than a week after mother's request for an adjudicatory trial, FCDHS moved for summary judgment, arguing in part that the environment in which Jo.G. was able to sexually act out against his sisters was injurious to all of the children and thus sufficient to adjudicate each of them as a dependent and neglected child. Acknowledging that "[i]t may be argued that no injurious environment currently exists because the parents have taken steps to address the issue and since [Jo.G.] is no longer in the home," FCDHS argued that nevertheless, the "evidence must be considered in the context of the child's history as well as the parent[s'] prior behavior."

¶ 6 As evidence that all four of the children remaining in the home were subject to "conditions and dangers" sufficient to adjudicate them as dependent and neglected children, FCDHS offered the sworn affidavit of one of its caseworkers. The affidavit documented FCDHS's concerns about the family beyond Jo.G.'s conduct and the steps mother and father L. had taken to prevent further incidents. Among other things, the caseworker stated that mother and father L. had a "long standing history" with FCDHS. This history included the parents being the subjects of earlier dependency and neglect proceedings, and two registered sex offenders who were part of father L.'s family and had been allowed to interact with the children. The trial

court denied the motion for summary judgment on February 21, 2014, and the adjudicatory trial began three days later.

¶ 7 Before trial, mother moved to exclude all evidence of her prior involvement or contacts with FCDHS not related to the current case and all evidence of unrelated criminal misconduct, including (1) notes and written reports prepared for the current case, including hearsay statements by several people, speculation by the caseworker regarding the thoughts and feelings of other persons, and other irrelevant or prejudicial material; (2) evidence about a 2010 domestic violence charge that was dismissed after she successfully completed a deferred sentence; (3) evidence relating to a 2003 dependency and neglect proceeding that was successfully closed after she completed her treatment plan; and (4) a psychological evaluation that had been performed on her in 2003.

¶ 8 Mother specifically argued that the evidence relating to the domestic violence charge and the 2003 dependency and neglect proceeding was remote in time, and involved facts completely unrelated to the sibling-on-sibling sexual assault that led to the filing of the current proceeding, and that the unfairly prejudicial effect of allowing such evidence would outweigh any potential probative value. FCDHS argued in response that in a dependency and neglect proceeding, evidence of a parent's past behavior is relevant to establish a pattern of abuse or neglect.

¶ 9 At trial, the court ruled that documents showing the "court history" of each of the parents would not be admitted because they contained too much irrelevant information. However, the court allowed FCDHS to introduce evidence relating to the 2003 dependency and neglect proceeding, including mother's psychological evaluation, because such evidence was relevant to show why FCDHS would be reluctant to trust mother to take appropriate action on her own or to accept voluntary services. The court also overruled mother's objection to the admission of "record of contact" notes recorded by the caseworker; overruled her objection to questions concerning the 2010 domestic violence charges against her; and denied her motion

for a mistrial based on the admission of the domestic violence evidence.

¶ 10 After two days of testimony, the jury was given instructions and asked to determine whether each of the four children whose status was to be determined lacked proper parental care as a result of one of his or her parents' acts or failures to act; whether each child was homeless, without proper care, or not domiciled with a parent through no fault of such parent; and whether each child's environment was injurious to the child's welfare. The jury found that none of the children lacked proper parental care as a result of a parent's acts or failures to act, and none were homeless, without proper care, or not domiciled with a parent through no fault of such parent. But, because the jury found that each child's environment was injurious to his or her welfare, the court adjudicated them as dependent and neglected children. The court later entered an order of disposition and adopted a treatment plan for each of the parents.

## II. Jury Instructions and Special Verdict Form

¶ 11 Because we conclude that the issues that mother has raised regarding errors in the jury instructions and in the special verdict form are dispositive, we will address them first.

■■ ¶ 12 Mother contends that the trial court committed reversible error by approving non-stock jury instructions that (1) instructed jurors they were not permitted to consider any fault on the part of the parents; and (2) permitted jurors, in the special verdict form, to decide whether each child was dependent and neglected based upon the children's treatment and care by any one of the respondents, without evaluating each parent's conduct and circumstances individually.

¶ 13 We conclude that the jury instructions did not mislead the jury, and the court did not err in approving them, to the extent that they instructed the jury that the issue before it was to decide the status of each child, and not to assign "fault" to the parents. However, we also conclude that the court erred by providing jury instructions and a special verdict form that allowed the jury to determine the status of each child without considering each parent's actions and each parent's availability, ability, and willingness to provide reasonable parental care to that child.

■■ ¶ 14 A trial court is obligated to correctly instruct the jury on the law applicable to the case, but, as long as this obligation is met, the court has broad discretion to determine the instructions' form and style. *Krueger v. Ary*, 205 P.3d 1150, 1157 (Colo. 2009).

■■ ¶ 15 An appellate court reviews jury instructions de novo to determine whether the instructions as a whole accurately informed the jury of the governing law. *People in Interest of S.X.M.*, 271 P.3d 1124, 1129 (Colo. App. 2011).

■■ ¶ 16 An instruction which misleads or confuses the jury amounts to error, but such error is not a ground for reversal unless it prejudices a party's substantial rights. *Hock v. N.Y. Life Ins. Co.*, 876 P.2d 1242, 1258 (Colo. 1994).

¶ 17 Colorado law does not permit the state to engage in an open-ended intervention into a parent-child relationship without a legal finding that the child is dependent and neglected. Once a petition in dependency and neglect has been filed and notice has been given to the child's parent, guardian, or legal custodian a juvenile court has jurisdiction to issue temporary orders providing for the legal custody, protection, support, evaluation, and treatment of a child.[1] However, the court's authority to issue such temporary orders exists only in the period "prior to

---

1. In a dependency and neglect proceeding, the court "shall name as respondents all persons alleged by the petition to have caused or permitted the abuse or neglect alleged in the petition." § 19–3312(2), C.R.S. 2014. A child may be deemed dependent and neglected based on the act or failure to act of a parent, guardian, or legal custodian. § 19–3–102, C.R.S. 2014. Thus, a guardian or legal custodian may, like a parent, be a respondent in a dependency and neglect proceeding. In using the term "parent," we do not intend to exclude guardians and legal custodians.

adjudication or disposition of [the child's] case." § 19–1–104(3), C.R.S. 2014.

¶ 18 The purpose of an adjudicatory hearing is to determine whether the factual allegations in the dependency and neglect petition are supported by a preponderance of the evidence, and, thus, whether the status of the child "warrants intrusive protective or corrective state intervention into the familial relationship." *People in Interest of A.M.*, 786 P.2d 476, 479 (Colo. App. 1989). This is a threshold determination that must be made to determine whether the court's jurisdiction will continue, or whether it must end.

¶ 19 If the allegations of the petition are not supported by the evidence, then the petition must be dismissed, the child must be discharged from any court-ordered detention or restriction, and the child's parents, guardian, or legal custodian must be discharged from any restriction or previous temporary order. § 19–3–505(6), C.R.S. 2014. With the dismissal of the petition and the discharge of any restrictions or temporary orders, the state's intervention into the relationship between the child and his or her parent, guardian, or legal custodian ends. *See People in Interest of A.H.*, 271 P.3d 1116, 1122–23 (Colo. App. 2011) (after two juries returned verdicts in father's favor, the trial court's continuing jurisdiction ended, and the court was required to dismiss the petition and discharge the child and father from any existing temporary orders).

¶ 20 Adjudication serves the important purpose of protecting parental rights. In *Troxel v. Granville*, 530 U.S. 57, 65–66, 68–69, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), the United States Supreme Court observed that parents have a fundamental right to make decisions concerning the care, custody, and control of their children; that right is protected by the Due Process Clause of the Fourteenth Amendment; and so long as a parent adequately cares for his or her children, there is normally no reason for the state to inject itself into the "private realm of the family" to question the ability of that parent to make the best decisions concerning the rearing of that parent's children. "[T]he Due Process Clause does not permit a State to infringe on the fundamental right of par-

ents to make child rearing decisions simply because a state judge believes a 'better' decision could be made." *Id.* at 72–73, 120 S.Ct. 2054.

¶ 21 The adjudication procedure allows the state to intervene when necessary to protect a child, but protects a parent's due process rights by requiring (1) the state to "set forth plainly the facts which bring the child within the court's jurisdiction" in the petition and (2) the court to dismiss the petition if the court finds that the allegations of the petition are not supported by a preponderance of the evidence. §§ 19–3–502(2), 19–3–505(6), C.R.S. 2014. These protections are afforded to each parent. *See A.H.*, 271 P.3d at 1120 ("Each parent has the right to a jury determination as to whether the facts alleged in the petition have been proved.").

¶ 22 Although the process of adjudication is intended to protect each of a child's parents from unnecessary state intrusion into the family relationship, a dependency adjudication does not focus primarily on the acts or omissions of the parent but is instead meant to determine the status of the subject child. A parent may be unable, as opposed to unwilling, to provide necessary care for his or her child. Thus, the Children's Code recognizes that a child may be dependent or neglected through no fault of the parents. *See* § 19–3–102(1)(e), C.R.S. 2014 (defining a child as dependent or neglected because he or she is "homeless, without proper care, or not domiciled" with the parent through no fault of that parent). The factual allegations of the dependency petition and any threshold determination of whether state intervention may be warranted do not, therefore, need to be based upon fault, blame, or unwillingness of the parent to act. And a child may be adjudicated dependent and neglected even if his or her parent is not assessed fault or blame for the child's dependent status. *M.S. v. People*, 812 P.2d 632 (Colo. 1991).

¶ 23 Because the need for state intervention is determined by the child's status rather than the acts of the parents, Colorado courts have repeatedly recognized that adjudications of dependency and neglect are not made "as to" parents, but, rather, relate only

to the status of the child at the time of the adjudication. *See, e.g., K.D. v. People,* 139 P.3d 695, 699 (Colo. 2006). This principle derives from a fundamental truth: a child's status is either dependent and neglected or it is not. However, because a fit parent has a fundamental right to the care, custody, and control of his or her children, free from state intervention, we conclude that a child is not dependent and neglected, and state intervention into the parent-child relationship is not warranted, if the child has at least one parent who is

- available;
- able to give the child reasonable parental care to include, at a minimum, nurturing and safe parenting sufficient to meet the child's physical, emotional, and mental health needs and conditions (including, if necessary, protecting the child from abuse or neglect by the other parent or other persons); and
- willing to provide such reasonable parental care.

¶ 24 The need for state intervention is not made in a vacuum. The child's status must be determined in the context of his or her past, present, and potential future relationship with his or her parent(s). Because both parents are entitled to a determination as to whether the facts alleged in the petition have been proved, when one or both parents request an adjudicatory trial, a final determination of a child's status may not be made until the factfinder has determined whether the child is or would be dependent and neglected as defined in section 19–3–102. The petitioner, as the moving party, must present sufficient evidence to persuade the factfinder, by a preponderance of the evidence, that the child's status is or will be dependent and neglected when considered with respect to each parent.

■ ¶ 25 In addition, because either parent may be capable of providing reasonable parental care for the child, evidence of an act, failure to act, or an admission of dependency by one parent that would support a finding that the child's status is or will be dependent and neglected is not necessarily dispositive. Although an act or failure to act by one parent may be imputed to anoth-

er if circumstances warrant, whether state intervention is appropriate under those circumstances must be made on a case-by-case basis, taking into account the parents' relationship with each other, the child, and other relevant factors. *See, e.g., People in Interest of S.G.L.,* 214 P.3d 580, 585–86 (Colo. App. 2009) (the court erred in sustaining injurious environment allegation made against the father based solely on the mother's conduct; no authority supported such a finding where the parents had never lived together, and to hold that the child could be found to be dependent and neglected in such circumstances would essentially eliminate the state's burden to prove its allegations against father by a preponderance of the evidence).

■ ¶ 26 If the state fails to prove that the child is or would be dependent and neglected under section 19–3–102, state intervention into the familial relationship is not warranted, and, if a petition in dependency and neglect has been filed, it must be dismissed. *See A.H.,* 271 P.3d at 1122–23 (verdict in father's favor was sufficient to end the court's jurisdiction).

¶ 27 Instruction 14 stated: "The only issue for you to decide is the status of the child and has nothing to do with the fault of the respondent parents. Adjudications of dependency or neglect are not made 'as to' the parents but rather relate only to the status of the child."

¶ 28 Instruction 17 instructed the jurors to answer the following questions with respect to each of the four children whose status as dependent and neglected children was to be determined by the jury:

- Is [child] lacking proper parental care as a result of one of [his or her] respondent parents' acts or failures to act?
- Is [child] homeless, without proper care, or not domiciled with a parent of this child through no fault of such parent?
- Is [child]'s environment injurious to the child's welfare?

¶ 29 These same questions appeared on the special verdict form and the jury responded "yes" to the interrogatories related to wheth-

er each child's environment was injurious to his or her welfare. The jury instructions as a whole and the special verdict form did not properly state the applicable law.

¶ 30 Instruction 14 correctly stated that the only issue for the jury to decide was the status of the child and that this "has nothing to do with the fault of the respondent parents." In other words, the jury was to determine whether each child was or would be dependent and neglected, as those terms are defined in section 19-3-102, if placed in the care of either of his or her parents, but, in doing so, the jury was not to attempt to assign "fault" to either parent.

¶ 31 But we conclude that Instruction 17 and the special verdict form misstated the law and misled the jury by suggesting that the children could be deemed to be dependent and neglected without considering, for each child, the actions or omissions of each parent and each parent's availability, ability, and willingness to provide reasonable parental care. We note that the attorney for FCDHS increased the likelihood of such a misunderstanding when he stated in closing argument that in determining whether the children lacked proper parental care as the result of one of the respondent parents' acts or failures to act, "[w]e're not looking at a particular parent."

¶ 32 We further conclude that the trial court's error in giving the instructions and special verdict form were prejudicial to mother, and therefore require reversal. As instructed, the jury was permitted to find that a child's dependent status in relation to any respondent parent was sufficient to find that the child was dependent and neglected as to all respondent parents. The jury was therefore impermissibly allowed to answer "yes" to the interrogatories regarding whether each child's environment was injurious to his or her welfare solely based upon finding that such an environment had been proven in relation to *any* parent. And the jury was not required to identify the parent whose circumstances created the injurious environment.

¶ 33 The status of a child as dependent must, however, be considered in relation to each of its parents and that parent's acts or failures to act and that parent's availability,

ability, and willingness to provide reasonable parental care. Thus, the jury's finding as reflected on the special verdict form that the children's environment was injurious to their welfare cannot be construed as a finding that the children's environment was injurious to their welfare because of mother's actions or omissions, or a finding that their environment will be injurious to their welfare because she is unable or unwilling to provide reasonable parental care.

¶ 34 If properly instructed to examine the children's status in relation to each parent separately, the jury might have concluded that the children's environment was *not* injurious to their welfare because mother was available, willing, and able to provide reasonable parental care. And had the jury made such a determination the children could not have been adjudicated as dependent and neglected.

### III. Evidence Regarding Domestic Violence

¶ 35 Because the issue may arise again after remand, we will also address mother's contention that the trial court committed reversible error by (1) improperly permitting the county attorney to use a 2010 misdemeanor domestic violence charge (ultimately dismissed as part of a deferred sentence) to impeach her and (2) denying her motion for a mistrial based on that error. She contends also that the evidence was inadmissible character evidence; that it was not relevant; and that its probative value was outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Because the admission of evidence and the decision whether to grant a mistrial are matters within the discretion of the trial court, we construe this as a contention that the trial court abused its discretion in admitting the evidence in question and in denying her motion for a mistrial. We cannot conclude from the record whether the court abused its discretion.

¶ 36 A trial court has substantial discretion in deciding questions concerning the admissibility of evidence and broad discretion to determine the relevancy of evi-

dence, its probative value and its prejudicial impact. Therefore, we will not disturb the trial court's ruling absent an abuse of discretion. *E–470 Pub. Highway Auth. v. 455 Co.,* 3 P.3d 18, 23 (Colo. 2000).

¶ 37 Similarly, the decision to grant or deny a motion for a mistrial is directed to the sound discretion of the trial court, and the court's decision will not be disturbed absent a clear showing of an abuse of discretion and prejudice to the moving party. *See People v. Williams,* 2012 COA 165, ¶ 13, 297 P.3d 1011.

¶ 38 A reviewing court may conclude that the trial court abused its discretion only if the trial court's ruling is manifestly arbitrary, unreasonable, or unfair. *Hock,* 876 P.2d at 1251.

¶ 39 Here, FCDHS sought to question mother about domestic violence charges brought against her in 2010. When mother's attorney objected on the ground that the evidence sought was not relevant and that the prejudice that would result from admitting it outweighed any probative value that it might have, the attorney for FCDHS stated that the evidence "goes to the environment." The court overruled the objection. Later, mother's attorney moved for a mistrial based on the admission of that evidence. The court denied the motion "consistent with . . . overruling the objection."

¶ 40 In the absence of more specific findings, we are unable to determine whether the court abused its discretion in determining that the evidence was relevant and admissible, and in denying mother's motion for a mistrial. Should the issue arise in future proceedings, the trial court will need to determine whether this constitutes prohibited other act evidence and, considering the appropriate factors, make more specific findings as to its admissibility. *See People v. Spoto,* 795 P.2d 1314, 1318 (Colo. 1990). Because we have reversed the adjudicatory and dispositional orders for the reasons stated in Part II, *supra,* it is unnecessary for us to fully resolve this issue at this time.

## IV. Other Contentions

¶ 41 In her original petition on appeal, mother raised additional issues, including (1) whether the trial court committed reversible error by allowing evidence of a prior dependency and neglect case involving her, where the prior case was over ten years old and involved facts completely dissimilar to the facts in this case; (2) whether the trial court committed reversible error by admitting into evidence the caseworker's record of contact notes, which contained significant amounts of hearsay evidence; and (3) whether the trial court committed reversible error by its disproportionate allocation of peremptory challenges, where FCDHS and the Guardian ad Litem (GAL) were allowed eight challenges, and the four parents were required to share four challenges, with the result that FCDHS and the GAL were allowed to strike four more jurors than the parents. Because she presented no arguments in support of those contentions in her original petition, and she did not raise them in her supplemental petition, we conclude that she has abandoned them. Accordingly, they are not properly before us, and we will not address them. *People in Interest of D.B–J.,* 89 P.3d 530, 531 (Colo. App. 2004) (where an appellant does not identify supporting facts, make specific arguments, or set forth specific authorities to support a contention, the contention is not properly before the appellate court and will not be addressed).

## V. Conclusion

¶ 42 The order and decree of adjudication for J.P., S.L., C.L., and J.G. and the subsequent dispositional order are reversed. The case is remanded to the trial court for further proceedings. If FCDHS elects to continue to pursue adjudication as to any or all of the children, the trial court shall conduct a new adjudicatory trial. If FCDHS does not pursue adjudication as to any or all of the children or if a new adjudicatory trial does not result in the adjudication of such children as dependent and neglected, consistent with this opinion then, with respect to such children, the trial court shall vacate the order and decree of adjudication and the disposi-

tional order, and dismiss the petition as required by section 19–3–505(6).

JUDGE BERNARD and JUDGE FOX concur.