24CA0436 Peo in Interest of SMJ 10-03-2024

COLORADO COURT OF APPEALS

_____

Court of Appeals No. 24CA0436
City and County of Denver Juvenile Court No. 23JV30185
Honorable Elizabeth Strobel, Judge
Honorable Pax Moultrie, Judge

_____

The People of the State of Colorado,

Appellee,

In the Interest of S.M.J., C.M.F., and K.F., Children,

and Concerning D.M.B.,

Appellant.

_____

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE HARRIS
Yun and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 3, 2024

_____

Kerry Tipper, City Attorney, Amy J. Packer, Assistant City Attorney, Denver, Colorado, for Appellee

Jenna Mazzucca, Counsel for Youth, Denver, Colorado, for S.M.J.

Josi McCauley, Guardian Ad Litem for C.M.F. and K.F.

Ainsley Bochniak, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant

¶ 1     D.M.B. (mother) appeals the juvenile court's judgment adjudicating S.M.J., C.M.F., and K.F. (the children) dependent or neglected. She contends that the juvenile court erred by (1) finding that she had voluntarily waived her right to a jury trial; and (2) determining that the children were dependent or neglected. We disagree and therefore affirm.

## I.     Waiver of Jury Trial

¶ 2     In March 2023, Denver Human Services (the Department) filed a petition in dependency and neglect. Mother requested, and the court ordered, an adjudicatory jury trial.

¶ 3     After granting an initial request for a continuance, the court scheduled the jury trial for November 1. On October 30, during a hearing that mother attended by Webex, the court agreed to appoint mother a new lawyer. As the court updated new counsel about the proceedings, mother was disconnected from the Webex platform. The court announced that "we're going [to] call [mother] back," and "in the meantime," it set a new trial date of December 13 at 8:00 a.m. It is not clear from the transcript if mother was, in fact, reconnected to the hearing.

¶ 4     Mother did not appear at the pretrial conference on December 11. Her new lawyer informed the court that he had not had any contact with mother since his appointment. The court decided that if mother did not appear for trial on December 13, it would likely conduct a bench trial the next day.

¶ 5     Mother did not appear for trial on December 13. When the court asked counsel, "What's [mother's] status?" her lawyer said he did not know her status but offered that he was "not sure if [mother] is aware of the time that we were set for this morning." The court asked for clarification regarding counsel's comment about "the time setting for this morning," and counsel clarified that he was "not sure if [mother] knew [the trial] was set at 8:00 a.m."

¶ 6     In light of the information that mother might not have had "notice that the trial started at [8:00 a.m.]," as opposed to 9:00 a.m., the court tried to contact her on two different telephone numbers and gave "her time to appear." But at 10:00 a.m., mother was still not present. The juvenile court found that mother was "present on October 30th" when new counsel was appointed, she had a "spotty history of attendance at court hearings," and she was not answering any of the telephone calls from the court. The court

2

concluded that "regardless of whether [mother] thought [trial] was set at 8:00 or 9:00," she was not present, and she had therefore waived her right to a jury trial.

¶ 7     On appeal, mother contends that the court erred by finding a waiver because the record does not show that she had notice of the trial date and voluntarily failed to appear.

### A.     Relevant Law and Standard of Review

¶ 8     A parent's right to a jury trial in dependency and neglect proceedings is statutory, not constitutional. § 19-3-202(2), C.R.S. 2024; *People in Interest of C.C.*, 2022 COA 81, ¶ 11. Still, once a party demands a jury trial, the right to a trial by jury "may be lost only for the reasons listed in C.R.C.P. 39(a)." *Wright v. Woller*, 976 P.2d 902, 903 (Colo. App. 1999); *see also* C.R.J.P. 1 (providing that, in dependency and neglect cases, the Colorado Rules of Civil Procedure apply when the Colorado Children's Code or the Colorado Rules of Juvenile Procedure do not address a particular procedure). Under Rule 39(a)(3), a party waives her right to a jury trial if she "fail[s] to appear at trial."

¶ 9     Before the court may find a waiver under Rule 39(a)(3), however, it must determine that the parent's nonappearance is

voluntary. *See C.C.*, ¶ 12. To that end, the court must inquire "about the parent's whereabouts and the circumstances concerning her absence." *Id.* at ¶ 18. If the court is satisfied that the parent will appear promptly or has a good reason for her tardiness, it should give the parent additional time to arrive before converting the jury trial to a bench trial. *Id.*

¶ 10     Waiver is ordinarily a mixed question of fact and law: we accept the trial court's findings of fact if they are supported by record evidence, but we assess the legal significance of the facts de novo. *See People in Interest of B.H.*, 2021 CO 39, ¶ 50 (addressing waiver of counsel in dependency and neglect proceedings).

## B.     Analysis

¶ 11     The question on appeal is whether the record supports the juvenile court's finding that mother voluntarily failed to appear for

the scheduled jury trial and thereby waived her right to a jury under Rule 39(a)(3).[1]  We conclude that it does.

¶ 12     Contrary to mother's assertions, the juvenile court *did* inquire as to mother's whereabouts when it asked counsel, "What's [mother's] status?"  In response, counsel did *not* tell the court that mother might not have known about the trial setting because she was not present at the October 30 hearing when the court set the trial date.  Rather, counsel explained that mother might not have known that trial was scheduled to begin at 8:00 a.m.  The court understood counsel's explanation to mean that there was a "concern about the time change" from 9:00 a.m. to 8:00 a.m., and counsel never suggested that the court's understanding was incorrect.  And no one disputed the court's recollection that mother had attended the October 30 hearing when the trial date had been continued.

---

[1] To the extent mother argues, as a factual matter, that she did not have notice of the trial, resulting in a due process violation that requires setting aside the adjudication order, she had to raise that issue in a C.R.C.P. 60(b) motion filed in the juvenile court.  *See, e.g.*, *In re C.L.S.*, 252 P.3d 556, 559 (Colo. App. 2011).  As an appellate court, we "don't (and, indeed, can't) make findings of fact." *Carousel Farms Metro. Dist. v. Woodcrest Homes, Inc.*, 2019 CO 51, ¶ 19.

¶ 13     On this record, we cannot say that the court erred by concluding that mother voluntarily failed to appear. The information provided to the court indicated that mother had notice of the date of trial but possibly not the start time. The court therefore determined that mother might have a "good reason for her tardiness" and gave her "additional time to arrive." *C.C.*, ¶ 18. But an hour after the later start time, mother had not appeared.

¶ 14     Still, mother says that because her lawyer was present "and prepared to move forward with the jury trial," the "parties" demanding a jury trial did not fail to appear. *See* C.R.C.P. 39(a) ("When trial by jury has been demanded . . . [t]he trial shall be by jury . . . unless . . . (3) all parties demanding trial by jury fail to appear at trial."). Mother's lawyer was not a "party" to the adjudication proceeding, though. A "party" is a "litigant" — "[o]ne by or against whom a lawsuit is brought." Black's Law Dictionary 1297 (12th ed. 2019). Nor was mother's lawyer "prepared to move forward with the jury trial" on December 13. At the December 11 pretrial conference, counsel told the court that even if mother appeared for trial, he would need a continuance to confer with her, and the court agreed to reset the trial date should that

6

circumstance arise. Thus, we need not decide in this case whether a parent waives her right to a jury trial if she voluntarily fails to appear but her counsel is present and offers to proceed without her.

¶ 15     In sum, the court correctly applied the law, and its determination that mother's nonappearance was voluntary is supported by the record. Accordingly, we conclude that the court did not err by finding that mother waived her right to a jury trial.[2]

## II.     Sufficiency of the Evidence

¶ 16     The evidence presented at the adjudication trial established the following facts:

- The Department opened a voluntary case in May 2022, based on reports that the father of the two younger children (father) had, on multiple occasions, assaulted mother in front of the children.

- In February 2023, the Department received reports alleging that the two older children, thirteen-year-old S.M.J. and six-year-old C.M.F., were chronically absent

---

[2] In light of our conclusion, we need not address the guardian ad litem's argument that mother was not entitled to a jury trial because she did not "personally demand[]" one.

7

from school and that mother was using drugs or abusing alcohol. A month later, the Department learned that the youngest child, eighteen-month-old K.F., had been found unattended in the street near mother's house.

- In March 2023, the two younger children submitted to hair follicle testing, the results of which showed that the children had been exposed to methamphetamine and cocaine.

- The Department filed a petition in dependency and neglect in March 2023 and placed the children with maternal grandparents. S.M.J. had frequent visits with her father, S.N.J.

- At around the time the petition was filed, mother stopped cooperating with the Department.

- In April 2023, father was released from prison. He was subject to a protection order listing mother as the protected party.

- In May, the caseworker saw mother and father together at the grandparents' house. In August, mother was

hospitalized after father assaulted her and broke her ribs.

- During the 2022-23 school year, C.M.F. missed forty-four days of school. S.M.J., an eighth grader, frequently missed her morning "core" classes, arriving at school in the afternoon.

- Although the school tried to enlist mother's help with the truancy issues, mother was uncooperative: she did not attend school meetings; she became angry at school staff who raised attendance concerns; and, on one occasion, she came to school "smell[ing] of alcohol and lunged at [the] safety and security officer."

- During the fall 2023 semester, after his placement with the grandparents, C.M.F.'s attendance improved significantly, and he was more social with his peers and adults. Neither the school social worker nor the caseworker had information about S.M.J.'s attendance at high school during that semester.

¶ 17 The juvenile court found that the Department had proved by a preponderance of the evidence that all three children lacked proper

parental care and would be in an injurious environment if returned to mother's care, and that mother had failed to provide the older two children with proper or necessary education. Accordingly, the court entered an order adjudicating the children dependent or neglected.

¶ 18 On appeal, mother contends that the evidence was insufficient to support a determination that the children were dependent or neglected.

### A. Legal Framework and Standard of Review

¶ 19 A child is dependent and neglected if, as pertinent here, (1) the "child lacks [proper parental] care through the actions or omissions of the parent"; (2) "[t]he child's environment is injurious to his or her welfare"; or (3) "[a] parent . . . fails or refuses to provide the child with proper or necessary subsistence, education, medical care, or any other care necessary for his or her health, guidance, or well-being." § 19-3-102(1)(b), (c), (d), C.R.S. 2024. "The purpose of an adjudicatory hearing is to determine (1) whether the factual allegations in the dependency and neglect petition are supported by a preponderance of the evidence, and (2) whether the status of the children warrants intrusive protective or corrective state

10

intervention into the familial relationship." *People in Interest of A.H.*, 271 P.3d 1116, 1120 (Colo. App. 2011).

¶ 20    Because a dependency and neglect proceeding is preventative as well as remedial, an adjudication may be based not only on current or past harm but also on prospective harm. *People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009). At all stages of a dependency and neglect proceeding, including the adjudication stage, the best interest of the child is paramount. *A.M. v. A.C.*, 2013 CO 16, ¶ 14.

¶ 21    The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn therefrom, are matters within the discretion of the juvenile court. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15. In determining whether the evidence is sufficient to sustain an adjudication, we review the record in the light most favorable to the prevailing party, and we draw every inference fairly deducible from the evidence in favor of the court's decision. *People in Interest of D.M.F.D.*, 2021 COA 95, ¶ 13. We must uphold the court's findings and conclusions if the record

supports them, even though reasonable people might arrive at different conclusions based on the same facts. *Id.*

### B. Proper Parental Care

¶ 22 The court determined that the children lacked proper parental care because mother had exposed them to drugs, including methamphetamine.

¶ 23 Mother argues that the Department failed to prove that mother had exposed the children to drugs, noting that mother's drug tests were positive for marijuana and cocaine, while the children's hair follicle tests were positive for marijuana, cocaine, *and* methamphetamine. But the fact that mother's March 2023 test results were not positive for methamphetamine does not mean that mother did not use methamphetamine in the presence of the children before March. Nor does it mean that mother did not otherwise allow the children to be exposed to methamphetamine.

¶ 24 Next, mother asserts that evidence the children were exposed to drugs "at an unknown time" before March 2023 and in "an unknown manner" was insufficient to prove they were dependent and neglected. The juvenile court, however, found that mother likely exposed the children to drugs while they were in her care.

That finding is based on the evidence and reasonable inferences drawn from it, and mother does not explain why the finding is clearly erroneous. Nor does mother provide any authority for the proposition that exposing the children to drugs including methamphetamine and cocaine does not amount to a lack of proper parental care. We think the court's contrary conclusion is reasonable, so we decline to disturb it on appeal.

¶ 25 Finally, that the children's grandparents were sober caregivers or that S.M.J. received proper parenting from her father says nothing about whether mother provided or would provide proper parental care.

## C. Injurious Environment

¶ 26 The juvenile court determined that, if returned to mother's care, the children would be in an injurious environment based on the occurrence of domestic violence.

¶ 27    According to mother, S.M.J.[3] is old enough to "self-protect" from exposure to domestic violence, so a home where domestic violence is occurring — presumably, even the kind that results in mother's hospitalization — is not an injurious environment for her. Mother does not explain what it means for a teenager to "self-protect" from severe domestic violence or point to any evidence that S.M.J. engaged in conduct that qualifies as "self-protective." The only evidence in the record on this subject was that the mere sight of mother and father together at the grandparents' house in May 2023 made S.M.J. "upset with [m]other."

---

[3] S.M.J., who was fourteen years old at the time of the hearing, was represented by counsel. *See* § 19-3-203(2), C.R.S. 2024 ("Upon the filing of a petition [in dependency and neglect], the court shall appoint counsel for youth for any child . . . who is twelve years of age or older."). At the beginning of trial, S.M.J.'s lawyer informed the court that "[S.M.J.] . . . does not believe that she . . . should be adjudicated dependent or neglected. She did not authorize me to say anything further on her behalf." Nonetheless, S.M.J.'s lawyer argued at trial that S.M.J. was dependent and neglected, and, on appeal, appellate counsel for youth filed a brief defending the judgment as to S.M.J. Without intending to admonish counsel, and acknowledging that "counsel for youth" is a new position in Colorado (and that S.M.J. might have reversed position after trial and authorized the appellate brief), we note that, subject to exceptions not applicable here, a lawyer must "abide by a client's decisions concerning the objectives of representation." R.P.C. 1.2(a); *see also* R.P.C., Preamble (A lawyer must "zealously assert[] the client's position under the rules of the adversary system.").

¶ 28    Alternatively, mother contends that the juvenile court erred by finding that she would not protect the children from the harm created by father's violence. On this point, we pause to emphasize, as the juvenile court did, that the person responsible for ending domestic violence is the perpetrator — in this case, father. Rebuking mother for not protecting the children from father's victimization of her might seem as if we are shifting the burden. But at the same time, the court had to, and properly did, consider the obvious and substantial harm to the children associated with domestic violence in the home. And the evidence showed that mother was not able to sever ties with father, even though a protection order had been issued and even though, according to the court's findings, the Department offered her assistance in this regard. (We reject, as unpreserved and therefore waived, mother's argument that the court should not have considered the evidence of father's August 2023 assault because it was inadmissible hearsay. *See People in Interest of M.B.*, 2020 COA 13, ¶ 14.)

¶ 29    Finally, mother contends that because she had frequent, unsupervised visits with the children, the court erred by finding that, if returned to mother's care, they would be in an injurious

environment. But simply because mother could visit with the children without endangering them does not necessarily demonstrate that she could provide safe and nurturing parenting as the primary caregiver.

### D. Failure to Provide Education

¶ 30 The juvenile court determined that mother failed to provide the two older children with proper and necessary education, based on evidence that the children were chronically absent from school when they were in mother's care.

¶ 31 Mother argues that the court erred because by the time of the adjudication hearing, the children's truancy issues had been resolved. True, but the court could reasonably have inferred from the evidence that the children's attendance improved thanks to the maternal grandparents' supervision, and, if they were returned to mother, who had not cooperated in prior efforts to get the children to school, the truancy issues would likely recur. *See People in Interest of S.X.M.*, 271 P.3d 1124, 1130 (Colo. App. 2011) (the fact finder's task at the adjudication stage is not to determine whether the child is "presently" receiving proper care, but rather whether the child "will lack" proper care if returned to the parent).

¶ 32    For these reasons, we conclude that the juvenile court did not err by adjudicating the children dependent and neglected.

### III.    Disposition

¶ 33    The judgment is affirmed.

JUDGE YUN and JUDGE KUHN concur.