The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203
2016 CO 39
Supreme Court Case No. 15SC57
Certiorari to the Colorado Court of Appeals
Court of Appeals Case No. 14CA595
Petitioners:
The People of the State of Colorado,
In the Interest of Minor Children: J.G., J.P., S.L., and C.L.,
and
J.G., J.P., S.L., and C.L., Children, by and through their Guardian ad Litem,
v.
Respondent:
M.L.
Judgment Reversed
en banc
May 23, 2016
Attorney for Petitioner The People of the State of Colorado:
Dan Slater Law Daniel B. Slater
Cañon City, Colorado
Attorney for J.G, J.P., S.L., and C.L., Children, by and through their Guardian ad
Litem:
Anna N. H. Ulrich, Attorney at Law, L.L.C.
Anna N. H. Ulrich
Salida, Colorado
Attorney for Respondent M.L.:
Davide C. Migliaccio, Attorney at Law Davide C. Migliaccio
Colorado Springs, Colorado
 
Attorney for Amicus Curiae Colorado Office of the Child’s Representative: Colorado Office of the Child’s Representative
Sheri Danz
Denver, Colorado
 
JUSTICE BOATRIGHT delivered the Opinion of the Court.
JUSTICE GABRIEL dissents, and JUSTICE HOOD joins in the dissent.
 
¶1               We granted certiorari in this case to resolve two points: (1) whether
determination of a child’s status as dependent or neglected under the injurious environment provision of Article 3 of the Colorado Children’s Code must take into account each parent’s actions or failures to act, and (2) whether findings as to parental fault are required to adjudicate a child dependent or neglected under the same provision. See § 19-3-102(1), C.R.S. (2015). Mother (“M.L.”) appealed a jury’s finding that the environment of four of her five children was injurious to their welfare and the trial court’s resulting adjudication that the children were dependent or neglected. M.L. argued that the trial court’s jury instructions improperly permitted the jury to determine the status of the children without evaluating each parent’s conduct and circumstances. Relying on Troxel v. Granville, 530 U.S. 57 (2000), the court of appeals agreed with M.L. and reversed the trial court’s adjudication. People in Interest of J.G., 2014 COA 182, ¶¶ 1, 23, __ P.3d __. We now reverse the court of appeals.
¶2               We hold that Troxel’s due process requirements do not necessitate that the State
prove that both parents lack the availability, ability, and willingness to provide reasonable parental care before a child may be adjudicated dependent or neglected under the injurious environment provision. Additionally, we hold that neither the plain language of the dependency or neglect statute nor Troxel requires the State to prove parental fault when adjudicating a child dependent or neglected under the injurious environment provision. Hence, we conclude that the trial court’s jury instructions were consistent with the plain language of the statute and the trial court did not err when it allowed the jury to find that the children’s environment was injurious to their welfare without first requiring the jury to make findings of parental fault. Therefore, we reverse the court of appeals’ judgment and remand this case to that court to address M.L.’s remaining issue on appeal.
1. Facts and Procedural History
¶3                M.L. is the mother of five children, J.W.G., J.G., J.P., C.L., and S.L., four of whom
are interested parties in this dependency or neglect appeal. The events leading to this case began when S.L. informed her mother and father (“B.L.”) that J.W.G., her half-brother, had touched her in a sexual manner while she was trying to sleep. The parents immediately contacted law enforcement officials, who discovered during their investigation that J.W.G. had also inappropriately touched another sister, J.P. As a result, J.W.G. was charged with unlawful sexual contact and sexual assault on a child. Initially, J.W.G. remained in the home while his siblings stayed with family members. Within a week, the Fremont County Department of Human Services (“DHS”) placed J.W.G. in an offense-specific foster home, and the remaining children returned to the family home.
¶4               In response to J.W.G.’s actions, the State filed a dependency or neglect petition
concerning all of the children pursuant to section 19-3-502, C.R.S. (2015). The petition named M.L. and the children’s fathers as respondents.[1] In pertinent part, it alleged that the children were dependent or neglected under three statutory bases: (1) the children lacked proper parental care, § 19-3-102(1)(b); (2) the children were homeless, without
1 G.G. is the father of J.W.G. and J.P.; L.A. is the father of J.G.; and B.L. is the father of S.L. and C.L.
proper care, or not domiciled with a parent through no fault of the parent, § 19-3-102(1)(e); and (3) the children’s environment was injurious to their welfare, § 19-3-102(1)(c). M.L. and G.G., J.W.G.’s father, admitted the allegations in the dependency or neglect petition as to J.W.G., but M.L. and the fathers of the remaining four children denied the allegations as to those children and requested a jury trial. The case thus proceeded to jury trial.
¶5               At the conclusion of the evidence, the State proffered several jury instructions to
which M.L. and the fathers objected. Specifically, M.L. objected to the questions in Jury Instruction 17, the State’s proffered instruction regarding the injurious environment provision. Jury Instruction 17 (and a corresponding special verdict form) included a total of thirteen questions, twelve of which asked the jury to decide whether each child was dependent or neglected based on one of the three statutory bases alleged by the State. In objecting, M.L. argued that the trial court should require the jury to find that the children’s environment was injurious to their welfare due to the actions or omissions of the parents, as per the pattern instruction for the injurious environment provision. See CJI-Civ. 41:17, Question 4.
¶6          The trial court rejected M.L.’s argument and gave the State’s proffered
instruction, which was consistent with the injurious environment provision’s statutory language. See § 19-3-102(1)(c). Notably, it excluded the parental fault language found in the pattern instruction. Therefore, the jury was not required to make findings as to parental fault regarding the State’s injurious environment allegation.[2] After the trial court ruled on the disputed jury instructions, the case went to the jury to determine whether each of the four children were dependent or neglected according to the State’s evidence.
¶7               In reaching its verdicts, the jury responded to the questions in the special verdict
form and Instruction 17. Specifically, the jury answered “no” to the questions asking (1) whether the children lacked parental care through the actions or omissions of the parents and (2) whether the children were homeless, without proper care, or not domiciled with their parents through no fault of the parents. But, it responded “yes” to the third question for the children, finding their environment injurious to their welfare. Based on the jury’s conclusion that the children’s environment was injurious, the court adjudicated the children dependent or neglected and continued the case for a dispositional hearing. At that hearing, the court entered an order adopting a treatment plan and granted legal custody of J.W.G. to DHS. It granted the parents legal custody of the four other children subject to DHS’s protective supervision.
¶8               M.L. appealed. She argued to the court of appeals that the trial court erred by
tendering the jury instructions because they did not require the jurors to make findings as to each parent’s fault. Instead, according to M.L., the jury instructions improperly
2 We note that the jury received another instruction pertinent to the injurious environment provision. Jury Instruction 11, which is a pattern instruction meant to accompany injurious environment allegations, defines an injurious environment as one that is (1) harmful to the child’s welfare, (2) under the control of or subject to change by the child’s parents, and (3) sufficiently injurious that a reasonable parent would act to change it. See CJI-Civ. 41:10. Jury Instruction 11’s propriety is not before us in this case.
permitted the jurors to find that the children were dependent or neglected based on an injurious environment even where at least one parent was available, able, and willing to provide reasonable parental care.
¶9               The court of appeals reversed, citing Troxel.[3] It recognized that “a fit parent has
a fundamental right to the care, custody, and control of his or her children, free from state intervention.” J.G., ¶ 23. It then held that by failing to require the jury to make findings as to parental fault, the trial court violated the United States Supreme Court’s ruling in Troxel that courts must presume that fit parents act in the best interests of their children. Id. In so doing, the court of appeals concluded that a child may not be adjudicated dependent or neglected if the child has at least one parent who can provide reasonable care.
¶10               After reaching this holding, the court then determined that Instruction 17 and the special verdict form “misstated the law and misled the jury by suggesting that the children could be deemed to be dependent or neglected without considering, for each child, the actions or omissions of each parent and each parent’s availability, ability, and willingness to provide reasonable parental care.” Id. at ¶ 31. It agreed with M.L. that Instruction 17 improperly permitted the jury to find that the children’s environment
3 M.L. also argued on appeal that the trial court erred by improperly admitting evidence of a 2010 misdemeanor domestic violence charge and denying her motion for a mistrial based on that error. The court of appeals concluded that it could not determine from the record whether the trial court abused its discretion because the trial court did not make specific findings when it denied M.L.’s motion for mistrial and permitted DHS to question M.L. about the domestic abuse charges. J.G., ¶ 40. Because it reversed the adjudication and disposition on other grounds, however, it declined to fully resolve this issue. Id. 
was injurious to their welfare without considering the conduct and condition of each parent. Id. at ¶¶ 32–33. The court concluded that the trial court’s error in giving Instruction 17 and the special verdict form was prejudicial and required reversal because, if the jury had been properly instructed, then it “might have concluded that the children’s environment was not injurious because [M.L] was available, willing, and able to provide reasonable parental care.” Id. at ¶ 34.
¶11               Both the State and the children’s guardian ad litem (“GAL”) petitioned for review. We granted certiorari on two issues.[4]
Ability, Availability, and Willingness to Provide Reasonable Parental Care
¶12               In the first issue, the State argues that the court of appeals improperly applied Troxel to this case and that in doing so, the court’s holding unnecessarily increased the State’s burden during the adjudicatory stage of dependency or neglect proceedings. We first examine the statutory due process requirements for the adjudicatory phase of dependency or neglect proceedings. Then, we consider whether Troxel supports the court of appeals’ holding that it is improper to adjudicate a child dependent or neglected when, after considering each parent’s actions or failures to act, the child has at
4 We granted certiorari to review the following issues:

 Whether the court of appeals erred in requiring jury findings “as to” the fault of each parent when a trial court is adjudicating a child dependent or neglected under the “injurious environment” provision of the Colorado Children’s Code.
 Whether the court of appeals erred in holding that the status of a child as dependent or neglected must be considered in relation to each parent’s acts or failures to act and the parent’s availability, ability, and willingness to provide reasonable parental care.

least one parent who is available, able, and willing to provide reasonable parental care. Contrary to the court of appeals’ conclusion, we hold that Troxel’s due process requirements do not necessitate that the State prove that both parents lack the availability, ability, or willingness to provide reasonable parental care before a child may be adjudicated dependent or neglected.
Statutory Interpretation
¶13               We review questions of law, including the construction of a statute, de novo. People in Interest of S.N., 2014 CO 64, ¶ 5, 329 P.3d 276, 279; A.M. v. A.C., 2013 CO 16, ¶ 8, 296 P.3d 1026, 1030. In construing statutes, we seek to ascertain and give effect to the General Assembly’s intent. In re B.B.O., 2012 CO 40, ¶ 6, 277 P.3d 818, 820. To do this, we look to the language of the statute so as to give effect to the plain and ordinary meaning of the General Assembly’s words. A.C., ¶ 8, 296 P.3d at 1030. A statute is ambiguous if it is susceptible to multiple interpretations. Id. If the statutory language is unambiguous, then we apply it as written. See State v. Nieto, 993 P.2d 493, 500 (Colo. 2000). We favor interpretations that produce a harmonious reading of the statutory scheme, and we avoid inconsistent constructions. A.C., ¶ 8, 296 P.3d at 1030.
Dependency or Neglect Procedures
¶14               Dependency or neglect proceedings are governed by Article 3 of the Colorado Children’s Code (the “Children’s Code”). See §§ 19-3-100.5 to -703, C.R.S. (2015). These proceedings must follow the procedural process mandated by the Children’s Code, which we briefly outline below.
 
¶15               First, if the State suspects that a child may be dependent or neglected, then it must file a petition containing the State’s factual allegations under section 19-3-502. A.C., ¶ 12, 296 P.3d at 1030. Next, the parents must receive notice of the petition’s substance, as well as the date of any hearing and their right to have an attorney present at that hearing. § 19-3-503. The court then informs the parents of their rights in court, and if the parents contest the allegations contained in the petition and request a trial— either to the court or to a jury—then the State must prove those allegations to the fact-finder by a preponderance of the evidence. A.C., ¶ 12, 296 P.3d at 1030 (citing §§ 19-3-202, -502 to -03; People in Interest of A.M.D., 648 P.2d 625, 641 (Colo. 1982)).
¶16               If the State fails to carry its burden, then the court will dismiss the case, vacate all
orders with respect to the child, and relinquish its jurisdiction. A.C., ¶ 12 (citing § 19-3-505(6)). But if the State proves the allegations by a preponderance of the evidence, then the court will sustain the petition, after which it may adjudicate the child dependent or neglected. Id. (citing § 19-3-505(7)). “The adjudication represents the court’s determination that state intervention is necessary to protect the child and that the family requires rehabilitative services in order to safely parent the child.” Id.
¶17               If the child is adjudicated dependent or neglected, then the court convenes a dispositional hearing, see § 19-3-508, during which it must order a treatment plan, see § 19-3-507. The treatment plan’s purpose “is to provide services to the family, to prevent unnecessary out-of-home placement of the child, and to facilitate reunification of the child and family.” A.C., ¶ 14, 296 P.3d at 1031 (citing § 19-3-507(1)(b)). The parents have the right to appeal the court’s final disposition regarding the treatment plan. See E.O. v. People, 854 P.2d 797, 801 (Colo. 1993). If the family does not appeal but instead “completes the treatment plan and the court is satisfied the family is no longer in need of services and the children are safe,” then the court dismisses the case and relinquishes jurisdiction. A.C., ¶ 14 (citing § 19-3-604). If the family fails to comply with the treatment plan, then the State or GAL may pursue a variety of options, including alternative permanent placement of the children or even termination of the parent-child relationship in certain circumstances.[5] Id. (citing § 19-3-604(1)(c)); §§ 19-3-508, -702.
¶18               We concur with the court of appeals’ characterization that the adjudicative process’s purpose is to “determine whether the factual allegations in the dependency or neglect petition are supported by a preponderance of the evidence” such that the child’s status “warrants intrusive protective or corrective state intervention into the familial relationship.” J.G., ¶ 18 (quoting People in Interest of A.M., 786 P.2d 476, 479 (Colo. App. 1989)). With this understanding of dependency or neglect proceedings in mind, we next consider whether the court of appeals erred in applying Troxel to conclude that a child cannot be adjudicated dependent or neglected if at least one parent is available, able, and willing to provide reasonable care.
Troxel’s Application
¶19               In reversing the trial court’s adjudication of dependency or neglect as to each of the four children, the court of appeals relied on Troxel. The court of appeals held that,
5 In addition to proving that the family has not complied with the treatment plan, the State must prove additional factors by clear and convincing evidence before a court may actually terminate the parent-child legal relationship. § 19-3-604(1)(c)(II), (III).
“because a fit parent has a fundamental right to the care, custody, and control of his or her children, free from state intervention,” a child cannot be dependent or neglected if at least one parent is available, able, and willing to provide reasonable parental care. J.G., ¶ 23. We now consider whether the court of appeals properly relied on Troxel in reaching its holding in this case.
¶20               We begin with the bedrock principle that the right to parent one’s children is a fundamental liberty interest. See In Interest of Baby A, 2015 CO 72, ¶ 20, 363 P.3d 193, 201 (citing Stanley v. Illinois, 405 U.S. 645, 651 (1972)). Thus, intervening in “[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child” requires “fundamentally fair procedures.” Santosky v. Kramer, 455 U.S. 745, 753–54 (1982). Troxel emphasized that statutory procedures must protect parents’ due process rights by requiring the State to justify its reasons for interfering with a family. 530 U.S. at 68, 70.
¶21               In particular, the Court in Troxel discussed the State’s ability to interfere with fit
parents’ decisions when it struck down Washington’s “breathtakingly broad” nonparental visitation statute. Id. at 67, 73. In that case, mother had decided to limit her children’s visits with their paternal grandparents to once per month. Id. at 61. The grandparents brought suit under Washington’s nonparental visitation statute, which provided that “[a]ny person may petition the court for visitation rights at any time,” and permitted the court to “grant such visitation rights whenever visitation may serve the best interest of the child.” Id. at 60–61 (citations omitted). After a hearing, the Washington Superior Court disregarded mother’s request of one visit per month and issued a decree ordering more frequent visits, finding that it would serve the children’s best interests. Id. at 61.
¶22               Ultimately, the Supreme Court reversed. It held that “fit parents act in the best interests of their children,” id. at 68, and stated that “the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a ‘better’ decision could be made,” id. at 72–73. It thus held that courts must apply a presumption in favor of the natural parents by according their decisions “special weight,” id. at 70, and considering “special factors that might justify the State’s interference,” id. at 68. In announcing its holding, the Court emphasized that “[t]he Washington Superior Court failed to accord the determination of [mother], a fit custodial parent, any material weight.” Id. at 72. In fact, the Superior Court’s “slender findings” and “announced presumption in favor of grandparent visitation” demonstrated that it reached its holding primarily because it disagreed with mother’s stated preference regarding grandparent visits. Id. In sum, Troxel stands for the proposition that courts may interfere with parents’ liberty interests in the care, custody, and control of their children only if there are special factors that justify doing so. Baby A, ¶ 24, 363 P.3d at 202; see also Troxel, 530 U.S. at 68.
¶23               Relying on Troxel, the court of appeals in this case created an additional factor that the State must prove before a child can be adjudicated dependent or neglected: that neither parent is available, able, and willing to provide reasonable parental care. J.G., ¶ 23. We determine that this is unnecessary, as the court of appeals’ analysis extends Troxel beyond its holding. The court of appeals’ holding—that at the adjudication stage of a dependency or neglect proceeding, the State may not intervene in the parent-child relationship when at least one parent is available, able, and willing to provide reasonable parental care—improperly assumes that the dependency or neglect statute fails to comply with Troxel’s due process requirements. However, neither the statute nor our precedent supports this holding, and Troxel does not require this—or any other—addition to the statutory criteria for the statute to pass constitutional muster.
¶24               Rather, the dependency or neglect statute, as drafted, satisfies due process. The purpose of adjudication is to determine whether State intervention is necessary to serve the best interests of the children, but to do so in a manner that protects parental rights. Thus, parents are afforded robust due process rights during the adjudicatory stage of dependency or neglect proceedings. Specifically, the statute protects against the erroneous deprivation of parental rights by putting the burden on the State to prove at least one of its allegations by a preponderance of the evidence to the satisfaction of the fact-finder. See L.L. v. People, 10 P.3d 1271, 1277 (Colo. 2000). Those factual allegations must meet statutory criteria that can be described as “special factors” as that term is used in Troxel. 530 U.S. at 68. Thus, the State justifies intervening into the parent-child legal relationship by proving special factors.[6]
6 In Baby A, we held that the State had to prove the special factors by clear and convincing evidence. ¶ 25, 363 P.3d at 202. However, Baby A was a parental rights termination case which held that the State could not terminate parental rights absent clear and convincing evidence. Id. This court has held that the preponderance of the evidence standard is proper for dependency or neglect proceedings, which present a lesser deprivation and require less procedural protection for parents. See L.L., 10 P.3d at 1276; A.M.D., 648 P.2d at 641.
 
¶25               The dependency or neglect statute also requires that each parent must be accorded (1) notice of the allegations made by the State; (2) the right to challenge the allegations at a trial either by the court or a jury; (3) the opportunity to present evidence in his or her favor; and (4) the right to be represented by an attorney. See §§ 19-3-102 to -508. Finally, as discussed above, the burden is on the State to prove the allegations by a preponderance of the evidence. Only if all these requirements have been met may the State intervene into a family’s affairs. These protections render the statutory dependency or neglect procedure fundamentally fair. In fact, we have already held that Colorado’s dependency or neglect procedures satisfy Troxel’s due process requirements. L.L., 10 P.3d at 1276 (distinguishing dependency or neglect proceedings from termination proceedings and holding that preponderance of the evidence standard sufficiently protects parents’ due process rights); see also A.M.D., 648 P.2d at 641. Thus, while dependency or neglect proceedings may present the risk of erroneously depriving parents of their parental rights, the statutory procedures protect against this possibility and serve the purpose of assisting and supporting families (when possible) rather than usurping a parent’s role. L.L., 10 P.3d at 1277.
¶26               In this case, the special factor warranting the State’s intervention is the children’s
injurious environment. See § 19-3-102(1)(c). In other words, the State may intervene when a child is in a situation that is likely harmful to that child. The fact finder can find an injurious environment only after hearing and weighing evidence from all parties and after the court has ensured that the parents received all of the due process rights that the statute guarantees. For these reasons, Troxel does not require modifying what the State must prove in dependency or neglect proceedings.
¶27               In concluding that the State must additionally prove that neither parent is available, able, and willing to provide reasonable parental care, the court of appeals unnecessarily conflated the statutory dependency or neglect criteria with the termination criteria. Nowhere does section 19-3-102, the adjudication statute, contain language requiring that both parents must be unavailable, unable, or unwilling to provide reasonable parental care before the children may be adjudicated dependent or neglected. Rather, that language is found in the termination statute at section 19-3-604(2). In termination proceedings, parental rights may be terminated if it is found by clear and convincing evidence that a child has been adjudicated dependent or neglected and that three additional factors exist. § 19-3-604(1)(c)(I)–(III).
¶28               The first factor is that the parent or parents failed to reasonably comply with an appropriate treatment plan, or the plan was unsuccessful, or a court found that no appropriate treatment plan could be devised. § 19-3-604(1)(c)(I). The second factor is that the parent or parents are unfit. § 19-3-604(1)(c)(II). The third factor is that the conduct or condition of the parent or parents is unlikely to change within a reasonable time. § 19-3-604(1)(c)(III). The statute then provides that a parent may be found unfit when the parent is unable or unwilling to give the child reasonable parental care:
In determining unfitness, conduct, or condition for purposes of [terminating parental rights after an adjudication that a child is dependent or neglected], the court shall find that . . . the conduct or condition of the  parent . . . renders the parent . . . unable or unwilling to give the child  reasonable parental care . . . .
 

 19-3-604(2) (emphasis added). Thus, it is the termination statute, not the adjudication statute, that contains the required finding of inability or unwillingness to give the child reasonable parental care.

¶29               The court of appeals judicially grafted the terms “unable,” “unwilling,” and “unavailable” to the adjudication stage of dependency or neglect proceedings. Adjudicatory proceedings, however, are distinct from termination proceedings, and each has different goals and requirements. Not only has this court previously determined that dependency or neglect proceedings satisfy Troxel’s due process requirements, but the additional factor in the court of appeals’ holding ignores the plain language of the statute and adds an element that the statute does not require. At the adjudicatory stage, the focus is on protecting children. Thus, for purposes of dependency or neglect proceedings in which the State alleges an injurious environment, parental conduct and condition is relevant to the treatment plan rather than the adjudication.
¶30               Moreover, dependency or neglect proceedings seek to preserve the family and, where necessary, formulate a treatment plan to resolve the issues that led to the adjudication, whereas termination proceedings are a last resort for the State. See A.M.D., 648 P.2d at 640 (“Only when conditions have so deteriorated that a child is abandoned or a parent is deemed unfit when tested by demanding standards is a parent-child relationship to be terminated.” (citations omitted)). As such, the burden of proof is higher and the State must prove additional criteria when terminating parental rights as opposed to determining whether a child is dependent or neglected. See L.L., 10 P.3d at 1276 (“Logically, the greater the deprivation, the greater the procedural protection provided to the parents.”).
¶31               Thus, we reiterate our holding in L.L. that the existing statutory dependency or neglect procedures do not violate parents’ due process rights. Id. at 1277. Accordingly, requiring an additional element at the adjudication stage—that both parents lack the availability, ability, and willingness to provide reasonable parental care—is unnecessary to meet constitutional muster. Having concluded that the dependency or neglect statute protects parents’ due process rights and that Troxel does not mandate any additional protections, we now turn to the question of whether Jury Instruction 17 properly instructed the jury on the applicable law.
III. Findings “As To” Parental Fault
¶32               On the second issue, the State argues that the court of appeals erred in requiring the trial court to instruct the jury that it must make findings as to the fault of each parent before determining whether a child is dependent or neglected under the injurious environment provision of the dependency or neglect statute. § 19-3-102(1)(c). We first examine the statute’s language and then examine whether the jury instructions accurately represent the law. We hold that the statute does not require the jury to make findings of parental fault and that the trial court’s jury instructions were consistent with the plain language of the statute’s injurious environment provision. And because we previously held that Troxel does not require findings of parental fault either, we conclude that the trial court did not err when it allowed the jury to find that the children’s environment was injurious to their welfare without first requiring the jury to make findings of parental fault.
Standard of Review
¶33               Trial courts must correctly instruct the jury on the law applicable to the case, but as long as they meet this obligation, they have broad discretion over the style and form of the instructions. Krueger v. Ary, 205 P.3d 1150, 1157 (Colo. 2009). We review jury instructions de novo to determine whether the instructions, when considered as a whole, accurately informed the jury of the pertinent law. See Chapman v. Harner, 2014 CO 78, ¶ 4, 339 P.3d 519, 521; Rogers v. Westerman Farm Co., 29 P.3d 887, 909 (Colo. 2001). We review a trial court’s decision to give or not to give a particular instruction for an abuse of discretion. Kinney v. People, 187 P.3d 548, 557 (Colo. 2008). A court’s ruling on jury instructions is an abuse of discretion only when the ruling results in a misstatement of the law or is manifestly arbitrary, unreasonable, or unfair. Id. at 558
Section 19-3-102(1)(c)
¶34               Dependency or neglect proceedings are the State’s method of “assist[ing] the parents and child in establishing a relationship and home environment that will preserve the family unit.” A.M.D., 648 P.2d at 640. Although the State may base its allegations that a child is dependent or neglected on any of the grounds contained in section 19-3-102(1),[7] only paragraph (c), the injurious environment provision, is at issue
7 In full, section 19-3-102(1) provides seven grounds for a child to be adjudicated dependent or neglected:
(a) A parent, guardian, or legal custodian has abandoned the child or has subjected him or her to mistreatment or abuse or a parent, guardian, or in this case. Paragraph (c) provides that a child is dependent or neglected if “[t]he child’s environment is injurious to his or her welfare.” § 19-3-102(1)(c). That paragraph differs from the others in the statute in two important ways. First, it is one of only two paragraphs that does not contain the words “parent, guardian, or legal custodian.”[8] This omission indicates the General Assembly’s intent to focus on the existence of an injurious environment rather than who caused it. See Nieto, 993 P.2d at 500 (“[I]t is presumed that the General Assembly meant what it clearly said.”). Thus, the legislature explicitly acknowledged that a child may be dependent or neglected for reasons that are distinct from the parents’ conduct or condition. legal custodian has suffered or allowed another to mistreat or abuse the child without taking lawful means to stop such mistreatment or abuse and prevent it from recurring;

 The child lacks proper parental care through the actions or omissions of the parent, guardian, or legal custodian;
 The child’s environment is injurious to his or her welfare;
 A parent, guardian, or legal custodian fails or refuses to provide the child with proper or necessary subsistence, education, medical care, or any other care necessary for his or her health, guidance, or well-being;
 The child is homeless, without proper care, or not domiciled with his or her parent, guardian, or legal custodian through no fault of such parent, guardian, or legal custodian;
 The child has run away from home or is otherwise beyond the control of the parent, guardian, or legal custodian;
 The child tests positive at birth for [an unlawful controlled substance].

Subsection (2) provides that a child may be dependent or neglected based on a pattern or habit of certain types of abuse, but is not at issue in this case.
8 The other is paragraph (g). Although it does not contain the term “parent, guardian, or legal custodian,” we presume that a child would not test positive at birth for a controlled substance without some action on the part of the mother.
 
¶35               Paragraph (c) also differs from most of the other bases for a finding of dependency or neglect in that it contains no language concerning fault. Specifically, paragraph (a) concerns situations where a parent has “abandoned” the child, “subjected [the child] to mistreatment or abuse,” or “suffered or allowed another to mistreat or abuse the child without taking lawful means to stop such mistreatment or abuse and prevent it from recurring.” Paragraph (b) contains the language, “through the actions or omissions of the parent.” Similarly, paragraph (d) concerns when a parent “fails or refuses to provide the child with” appropriate care. Paragraph (e) specifically includes the language “through no fault of [a] parent.”[9] Paragraph (f) considers the child’s actions as opposed to the parents’, including when the child has run away or is beyond the parents’ control. Like paragraph (c), paragraph (g) also contains no language concerning fault. However, it concerns children who test positive for unlawful controlled substances at birth, which necessarily requires some parental action. In contrast, paragraph (c) simply concerns when a child’s environment is injurious to his or her welfare.
¶36               Thus, with the exception of paragraph (c), the grounds for adjudicating a child dependent or neglected all implicate a parent’s (or, in the case of paragraph (f), a child’s) fault. We must assume that the General Assembly’s exclusion of such language in paragraph (c) was purposeful, meaning it did not intend to require the fact finder to
9 Whether this language applies to all three circumstances listed in paragraph (e)—that the child is homeless, lacks proper care, or is not domiciled with a parent—as opposed to just the last one does not impact our holding and need not be decided at this time.
 
make findings as to the fault of the parents under that paragraph. See Nieto, 993 P.2d at 500.
¶37               M.L. asserts that paragraph (c) necessarily requires findings of parental fault because, unlike paragraph (e), it does not explicitly state that the child’s environment may be injurious “through no fault of [the] parent.” We reject such a reading because it adds words to the statute. See Well Augmentation Subdistrict of Cent. Colo. Water Conserv. Dist. v. City of Aurora, 221 P.3d 399, 419 (Colo. 2009) (“When the General Assembly includes a provision in one section of a statute, but excludes the same provision from another section, we presume that the General Assembly did so purposefully.”). Moreover, it improperly narrows the statute’s scope to focus on the parents’ conduct rather than on the child’s environment, contrary to the fundamental purpose of dependency or neglect proceedings. “At all times [during a dependency or neglect proceeding], the best interest of the child or children is paramount.” A.C., ¶ 14, 296 P.3d at 1031. The Children’s Code exists to protect children and ensure that they have a safe and healthy environment. See § 19-1-102(1). It does not exist to punish parents or ascribe fault.
¶38               As we stated in K.D. v. People, 139 P.3d 695, 699 (Colo. 2006), “[c]onsistent with the [Children’s] Code’s emphasis on the child’s best interests, [dependency or neglect] adjudications ‘are not made as to the parents but, rather, relate only to the status of the child as of the date of the adjudication.’” (emphasis added) (quoting People ex rel. S.B., 742 P.2d 935, 939 (Colo. App. 1987)). Where the statutory grounds for dependency or neglect reference parental conduct, that conduct is relevant to adjudication. However, where the statute does not include such language, parental conduct or condition is relevant only to the treatment plan—which must be tailored to the family’s specific situation—rather than the need for adjudication. Thus, even if parental conduct and condition is central to creating an appropriate treatment plan for the family, it is not necessarily the primary focus during the adjudication stage. For this reason, we have stated that “[i]n a dependency and neglect situation . . . the safety of the Colorado child, and not the custodial interest of the parent, is the paramount concern.” L.G. v. People, 890 P.2d 647, 655 (Colo. 1995).
¶39               M.L. also asserts that in addition to the statute, Troxel mandates that the jury make findings as to parental fault before it can determine that a child’s environment is injurious. But just as Troxel does not require the State to prove that both parents could not or would not provide reasonable parental care at the adjudication stage of dependency or neglect proceedings, see supra ¶ 31, it does not require that the jury make findings as to parental fault at the adjudication stage. As we discussed above, our dependency or neglect procedures satisfy Troxel’s due process requirements. Therefore, Troxel necessitates no additional findings beyond those contained in the statute, and the statute does not require the State to prove parental fault.
¶40               In sum, section 19-3-102(1)(c) does not require proof of parental fault. Instead, a
child may be adjudicated dependent or neglected when he or she is in an injurious environment, regardless of the parents’ actions or failures to act.[10] We now apply that
10 Because we hold that section 19-3-102(1)(c) does not require the state to prove any parental fault, we do not consider whether, in instances where one or both parents are standard to this case and determine whether the trial court erred in providing the jury with Instruction 17 and the special verdict form.
Jury Instruction 17 and the Special Verdict Form
¶41               In this case, Jury Instruction 17 (and the corresponding special verdict form) asked the jury, “Is [child’s] environment injurious to the child’s welfare?” The pattern jury instruction proffered by M.L., however, asks, “Is [name of child]’s environment injurious to [his] [her] welfare as a result of respondent, [name]’s, acts or failures to act?” CJI-Civ. 41:17, Question 4 (alterations in original) (emphasis added). M.L. argues that the trial court erred because Instruction 17 differed from her proffered instruction—which mirrored the pattern instruction—and misstated the law in that it did not require the jury to find parental fault. The plain language of the statute does not support M.L.’s assertion of error.
¶42               The pattern instruction diverges from the statutory language, which makes no mention of parental fault in relation to injurious environments. See § 19-3-102(1)(c). Instruction 17, on the other hand, conformed to the statutory language. Therefore, we perceive no error. A jury instruction that tracks the exact language of a statute is unlikely to mislead the jury on the state of the law. Because neither the statute nor Troxel requires proof of parental fault to support a finding that a child’s environment is injurious, the jury instructions need not do so either.
at fault for the child’s injurious environment, the state must prove fault as to each parent rather than just one.
 
¶43               Thus, section 19-3-102(1)(c) does not mandate findings as to parental fault and therefore the trial court did not err in giving Jury Instruction 17 and the corresponding special verdict form.
Conclusion
¶44               We hold that Troxel’s due process requirements do not necessitate that the State prove that both parents lack the availability, ability, and willingness to provide reasonable parental care before a child may be adjudicated dependent or neglected. Additionally, we hold that neither the plain language of the statute nor Troxel requires the State to prove parental fault when adjudicating a child dependent or neglected under the injurious environment provision. Hence, we conclude that the trial court’s jury instructions were consistent with the plain language of the statute and the trial court did not err when it allowed the jury to find that the children’s environment was injurious to their welfare without first requiring the jury to make findings of parental fault. Therefore, we reverse the court of appeals’ judgment and remand this case to that court to address M.L.’s remaining issue on appeal.
JUSTICE GABRIEL dissents, and JUSTICE HOOD joins in the dissent.
 
JUSTICE GABRIEL, dissenting.
¶45               The purpose of an adjudicatory hearing on dependency or neglect is to determine whether a child, “for whatever reason, lacks the benefit of adequate parental protection, care and guidance.” People in Interest of O.E.P., 654 P.2d 312, 319 (Colo. 1982). The adjudication requires the fact finder to determine the status of the child, that is, whether he or she is “neglected or dependent” pursuant to section 19-3-102, C.R.S. (2015). Because the proceeding focuses on the child’s best interests, we have stated that a dependency or neglect adjudication is not made “as to” the child’s parents but rather relates only to the child’s status. See, e.g., K.D. v. People, 139 P.3d 695, 699 (Colo. 2006).
¶46               Here, the state alleged that four children were dependent or neglected because each child’s environment was injurious to his or her welfare within the meaning of section 19-3-102(1)(c). The majority concludes that the district court did not err when it allowed the jury to find that the children’s environment was injurious to their welfare without requiring the jury to consider or make findings regarding any of the individual acts or omissions of respondent mother, as opposed to those of any of the respondent fathers. See maj. op. ¶ 44. Based on this determination, the majority further concludes that the jury instructions in this case, which did not require the jury to make such findings, were proper. See id.
¶47               Because I disagree with both of these conclusions, I respectfully dissent.
Analysis
¶48               In my view, the resolution of this case requires us to consider both Article 3 of the Children’s Code, §§ 19-3-100.5 to -703, C.R.S. (2015), which governs dependency or neglect proceedings, and the demands of due process. Accordingly, I first address the statutory and constitutional issues, and I conclude that due process prevents an adjudication of dependency or neglect absent consideration of and findings regarding each respondent parent’s acts or omissions (or, if pertinent, fault or lack thereof). I then consider whether the jury instructions at issue in this case were erroneous in light of this determination, and I conclude that they were. Finally, I offer some thoughts on the confusion engendered by the oft-cited adage that dependency or neglect adjudications are not made “as to” the parents because they relate only to the child’s status. See K.D., 139 P.3d at 699. In my opinion, the requirement that the adjudication focus on the child is not inconsistent with the need to consider and make findings regarding the circumstances of each parent.
The Children’s Code
¶49               When construing a statute, we seek to effectuate the General Assembly’s intent by looking to the plain meaning of the statute and considering the statutory language in the context of the statute as a whole. S. Fork Water & Sanitation Dist. v. Town of South Fork, 252 P.3d 465, 468 (Colo. 2011). We must construe the entire statutory scheme to give consistent, harmonious, and sensible effect to all of the statute’s parts. Id. In addition, in gleaning the meaning of an ambiguous statute, we must avoid statutory constructions that conflict with the Colorado or United States Constitutions. People in Interest of O.C., 2013 CO 56, ¶ 15, 308 P.3d 1218, 1221.
Dependency or Neglect Proceedings
¶50               Article 3 of the Children’s Code prescribes a judicial process for state intervention into a family unit. The process generally begins with the filing of a petition alleging that a child is neglected or dependent. See generally § 19-3-501, C.R.S. (2015). Any parent alleged to have abused or neglected a child “shall be named as a respondent in the petition concerning such child.” § 19-3-502(5), C.R.S. (2015) (emphasis added). Any other parent “may” be named as a respondent if it is in the best interests of the child that the parent be named. Id. (emphasis added). In addition, the petition must state the names and residences of the child’s parents (if known). § 19-3-502(2). Here, the petition named all of the children’s parents (i.e., respondent mother and three respondent fathers) as respondents.
¶51               After the petition has been filed, the court must promptly issue a summons reciting briefly the substance of the petition and setting forth “the constitutional and legal rights” of the child and his or her parents. § 19-3-503(1), C.R.S. (2015). The summons must require “the person or persons having the physical custody of the child to appear.” § 19-3-503(3). If such persons are not the parents of the subject child, then a summons must also be issued to the parents “notifying them of the pendency of the case and of the time and place set for hearing.” Id. In addition, upon hearing after prior notice to the parents, the court may issue temporary orders providing for the legal custody, protection, support, and medical treatment of the subject child. § 19-1-104(3)(a), C.R.S. (2015).
 
¶52               After the petition has been filed and the requisite summonses have been issued, the court generally conducts an adjudicatory hearing to consider whether the allegations in the petition are supported by a preponderance of the evidence. § 19-3-505(1), C.R.S. (2015). Any respondent may demand that the adjudicatory hearing occur before a six-person jury. § 19-3-202(2), C.R.S. (2015). In addition, each respondent has the right to be represented by counsel at every stage of the proceedings. § 19-3-202(1).
¶53               If the fact finder ultimately determines that the allegations in the petition are not supported by a preponderance of the evidence, then the court must order the petition dismissed and the child and his or her parents discharged from any detention or restriction previously ordered. § 19-3-505(6). If, however, the fact finder determines that the allegations of the petition are supported by a preponderance of the evidence, then the court must sustain the petition and make an order of adjudication setting forth whether the child is neglected or dependent. § 19-3-505(7)(a). Once a child has been adjudicated neglected or dependent, the court has continuing jurisdiction over that child until he or she turns twenty-one, unless the court’s jurisdiction is terminated earlier by court order. § 19-3-205(1), C.R.S. (2015).
¶54               “[A] dependency or neglect proceeding and the resulting adjudication provides the jurisdictional bases for State intervention to assist the parents and child in establishing a relationship and home environment that will preserve the family unit.” People in Interest of A.M.D., 648 P.2d 625, 640 (Colo. 1982). After the court enters an order adjudicating the child neglected or dependent, it must hold a dispositional hearing. See § 19-3-505(7)(b). Except when the proposed disposition is the termination of the parent-child legal relationship, the court must approve an appropriate treatment plan “involving the child named and each respondent named and served in the action.” § 19-3-508(1)(e)(I), C.R.S. (2015).
Due Process
¶55               As the foregoing makes clear, although the adjudication focuses on the status of the child, the process subjects the parents to the jurisdiction and orders of the court from the time the petition is filed and the summonses are issued throughout the pendency of the case. Accordingly, although courts sometimes laud the “helpful and remedial” purposes of dependency or neglect proceedings “in preserving and mending familial ties,” A.M.D., 648 P.2d at 640, adjudicatory proceedings can have a substantial impact on the lives of respondent parents, and the orders resulting from an adjudication can significantly interfere with the “fundamental liberty interest of natural parents in the care, custody, and management of their child,” Santosky v. Kramer, 455 U.S. 745, 753 (1982); accord L.L. v. People, 10 P.3d 1271, 1275–76 (Colo. 2000) (citing Troxel v. Granville, 530 U.S. 57 (2000); Stanley v. Illinois, 405 U.S. 645, 651 (1972)); see also Robinson v. People, 476 P.2d 262, 265 (Colo. 1970) (explaining that although dependency or neglect proceedings result in neither a fine nor imprisonment, “the interest of the state must be exercised without denial of fundamental fairness as required by due process of the Fourteenth Amendment”).
¶56               For example, an adjudication suggests failures of parenting by respondent parents, and prior adjudications are often cited in subsequent dependency or neglect proceedings in support of the need for continued state intervention in a family’s life. Cf. A.M.D., 648 P.2d at 643 (Quinn, J., concurring in part and dissenting in part) (noting that at the dependency phase of the case, the state “seeks judicial intervention into the parental relationship due to alleged defalcations of the parent”).
¶57               Similarly, an adjudication has real legal consequences for a parent, who at best must comply with a court-ordered treatment plan and at worst faces the termination of his or her parent-child legal relationship. See § 19-3-604, C.R.S. (2015) (setting forth the criteria for terminating the parent-child relationship).
¶58               In my view, to justify imposing such consequences and obligations on a parent, due process demands that we interpret the Children’s Code in a way that requires the fact finder to consider and make findings regarding the acts or omissions (or, if pertinent, the fault or lack thereof) of each respondent parent. I reach this conclusion for several reasons.
¶59               First, I am aware of no area of law in which a state may interfere with a person’s fundamental rights without considering and making findings regarding the acts or omissions of that person that justify such interference.
¶60               Second, as noted above, section 19-3-508(1)(e)(I) mandates that except when the proposed disposition is termination of the parent-child legal relationship, the court “shall approve an appropriate treatment plan involving the child named and each respondent named and served in the action.” This section “presupposes an adjudication of the child relative to each parent” because “the court does not have the power to impose a treatment plan on a parent when the child has not been found to be dependent and neglected by that parent.” People in Interest of S.G.L., 214 P.3d 580, 583 (Colo. App. 2009) (emphasis added); see also People in Interest of U.S., 121 P.3d 326, 328 (Colo. App. 2005) (noting that a juvenile court cannot “impose a treatment plan on a parent when the child has not been found to be dependent and neglected by that parent”).
¶61               Third, divisions of the court of appeals have made clear that “[e]ach parent has the right to a jury determination as to whether the disputed factual averments in a petition are proved.” S.G.L., 214 P.3d at 583; accord People in Interest of A.M., 786 P.2d 476, 479 (Colo. App. 1989). In A.M., 786 P.2d at 479, for example, a mother admitted to allegations of abuse in a dependency or neglect petition and did not contest that the children at issue lacked proper parental care through no fault of her own. Id. The division concluded, however, that the mother’s admissions were legally insufficient to sustain the allegations because, among other things, the father denied those allegations. Id. As the division observed, by basing the adjudication solely on the mother’s no-fault admission, the court effectively denied the father his day in court, deprived him of the opportunity to require the presentation of and to challenge evidence offered to sustain the petition, to confront and cross-examine the mother as to the basis for her ostensible belief as to the children’s present status, and to present evidence controverting the petition’s allegations. Yet, despite having been denied those fundamental rights, the father’s home and his relationship with his children were made the focus of the state’s intrusive intervention under the treatment plan.
Id. at 480; see also People in Interest of T.R.W., 759 P.2d 768, 771 (Colo. App. 1988) (explaining that to “permit an adjudication of dependency and neglect on the basis of a non-custodial parent’s admission . . . where the finder of fact has determined that the child is not dependent and neglected with respect to the custodial parent would produce an absurd result and contravene the purposes of the Children’s Code”) (emphasis added).
¶62               In my view, these cases properly balanced the adjudicatory hearing’s primary concern for the child’s welfare against the parents’ fundamental rights to the care, custody, and control of their children and to due process. Thus, these cases correctly concluded that a fact finder in an adjudicatory hearing must consider the acts, omissions, and circumstances of each respondent parent. If such consideration were not required, then a stipulation by one parent that a child was neglected or dependent would always support a dependency or neglect adjudication against the other parent, regardless of the other parent’s acts, omissions, or circumstances. For the reasons set forth above, I believe that such a scenario would violate the other parent’s fundamental rights and due process.
¶63               Accordingly, I conclude, contrary to the majority, that the Children’s Code and due process require the fact finder in an adjudicatory proceeding to consider and make findings regarding the acts, omissions, and circumstances of each respondent parent before adjudicating a child dependent or neglected.
¶64               For two reasons, I am not persuaded otherwise by the majority’s determination that the language of section 19-3-102(1) shows that the fact finder is not required to make such findings, which the majority characterizes as findings of parental fault, when the state alleges an injurious environment under that section.
 
¶65               First, the question of whether the fact finder must make findings regarding the individual acts or omissions of each respondent parent is analytically distinct from whether section 19-3-102(1)(c) requires a showing of fault.
¶66               Second, it is not clear to me that the General Assembly intended to omit from section 19-3-102(1)(c) any requirement of action or inaction on the part of the respondent parent. As the majority correctly observes, sections 19-3-102(1)(a), (b), (d), (f), and (g) all implicate some conduct (or fault) of either the parents or the child. Maj. op. ¶¶ 35–36. From this premise, the majority concludes that the General Assembly intentionally omitted from section 19-3-102(1)(c) a requirement of showing parental fault. Maj. op. ¶ 36. The General Assembly, however, also did not include “no fault” language in section 19-3-102(1)(c), as it did in section 19-3-102(1)(e). Accordingly, although the majority states that respondent mother’s argument (i.e., that consideration of and findings regarding her individual circumstances are required) would add a fault requirement to section 19-3-102(1)(c), maj. op. ¶ 37, the majority itself is reading into section 19-3-102(1)(c) a no-fault provision. I would do neither. Instead, I view section 19-3-102(1)(c) as ambiguous, and I perceive nothing in the language of that section, or in the Children’s Code generally, that precludes a fact finder from considering the acts or omissions of each parent in the course of an adjudicatory proceeding. To the contrary, for the reasons set forth above, I believe that a parent’s fundamental rights and due process require such consideration.
The Adequacy of the Jury Instructions
¶67               Having concluded that due process requires consideration of and findings regarding each respondent parent’s acts, omissions, and circumstances, the question for me becomes whether the jury instructions in this case precluded the jury from doing so. I believe that they did.
¶68      Instruction 11 stated:
A child’s environment is injurious to the child’s welfare when all the following exist:

 The environment is harmful to the welfare of the child;
 The environment is under the control of, or is subject to change by, the child’s parents; and
 The environment is sufficiently injurious to the child’s welfare that any reasonable parents would act to change it.

¶69               Instruction 14, in turn, advised the jury, “The only issue for you to decide is the status of the child and has nothing to do with the fault of the respondent parents. Adjudications of dependency or neglect are not made ‘as to’ parents but rather relate only to the status of the child.”
¶70               In my view, these instructions did not direct the jurors to consider and make findings regarding each respondent parent’s individual acts or omissions. To the contrary, when read together, they suggested to the jurors that they need not separately consider the acts or omissions of each of the four respondent parents in this case before determining that the children’s environment was injurious. Cf. Leonard v. People, 369 P.2d 54, 62 (Colo. 1962) (noting that although instructions that track the language of a statute are generally proper, they are not proper when the statute itself “may tend to create ambiguities and lead to confusion in the minds of the jurors”).
¶71               This confusion was compounded by the special verdict form, which asked the jurors to determine, as to each child, whether the child’s “environment [was] injurious to the child’s welfare.” (The jury answered, “Yes,” for each child, without relating that finding to any of the respondent parents.) Had the district court instead followed Colorado’s pattern jury instructions, it would have required the jurors to decide whether each child’s “environment [was] injurious to [his or her] welfare as a result of the respondent [parent’s] acts or failures to act.” See CJI-Civ. 4th 41:17 (emphasis added). I believe that such an instruction would accurately have stated the applicable legal standard.
¶72               Accordingly, in my view, the division correctly concluded that the instructions at issue “misstated the law and misled the jury by suggesting that the children could be deemed to be dependent and neglected without considering, for each child, the actions or omissions of each parent.” People in Interest of J.G., 2014 COA 182, ¶ 31, ___ P.3d ___. I therefore agree with the division that the district court’s decision should be reversed. See id. at ¶ 42.
¶73               For the reasons set forth by the majority, maj. op. ¶ 23, however, I would not require the state to prove that a child lacks at least one parent who is available, able to give the child reasonable parental care, and willing to provide such reasonable parental care. See J.G., ¶ 23 (explaining that a fit parent, i.e., one who meets these criteria, has the right to the care, custody, and control of his or her children free from state intervention in the form of a dependency or neglect adjudication). Like the majority, I do not believe that either the Children’s Code, the constitution, or our precedent mandates such additional requirements. Maj. op. ¶ 23.
Adjudications “As to” the Parent
¶74               Because it has been the subject of much confusion, the principle that adjudications of dependency or neglect are not made “as to” the parent but rather relate only to the “status of the child” warrants comment.
¶75               The phrase “as to the parent” does not appear in the Children’s Code, although many cases from both this court and divisions of the court of appeals have recited the principle that adjudications are not made as to the parent but rather relate to the status of the child. See, e.g., K.D., 139 P.3d at 699; People in Interest of P.D.S., 669 P.2d 627, 627–28 (Colo. App. 1983). In many instances, however, the very same cases that have reiterated this principle have also stated that the adjudication was made as to the respondent parents. Compare K.D., 139 P.3d at 697 (stating that K.D. was separately adjudicated dependent or neglected “as to Mother” and “as to Father”), with id. at 699 (stating that adjudications are not made as to the parents but rather relate only to the status of the child); see also S.G.L., 214 P.3d at 585 (“Although we generally agree with the district court’s statement that dependency and neglect adjudications are not made ‘as to’ parents but relate to the status of the child, case law also makes clear that each parent has a right to a jury determination as to whether the disputed factual averments in a dependency and neglect petition are proved.”) (citations omitted).
 
¶76               Although the juxtaposition of the concepts “the status of the child” and “as to the parent” is perhaps unfortunate, I understand these concepts to concern distinct findings in the above-mentioned cases. Specifically, when a juvenile court makes findings relating to “the status of the child,” it is referring to the circumstances surrounding the child that require the state’s intervention. See K.D., 139 P.3d at 697 (noting that the child had been adjudicated dependent or neglected because his mother had admitted to suicidal ideations and depression and his father was incarcerated for domestic violence and driving while intoxicated). The phrase “as to the parent,” in contrast, refers to the resolution of the petition’s allegations against that parent as a respondent. See id. (noting adjudications “as to” the mother and the father at what appear to be separate hearings).
¶77 Such an interpretation is consistent with my understanding of the Children’s Code and with each parent’s constitutional rights, as set forth above.
Conclusion
¶78                    For these reasons, I respectfully dissent.
I am authorized to state that JUSTICE HOOD joins in this dissent.