25CA1549 Peo in Interest of PE 02-26-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA1549
Larimer County District Court No. 24JV30146
Honorable C. Michelle Brinegar, Judge

The People of the State of Colorado,

Appellee,

In the Interest of P.E. and J.E., Children,

and Concerning E.E.,

Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE HARRIS
Dunn and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 26, 2026

William G. Ressue, County Attorney, Arthur J. Spicciati, Assistant County Attorney, Fort Collins, Colorado, for Appellee

Tomi L. Hanson, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

¶ 1 In this dependency and neglect proceeding, E.E. (father) appeals the judgment of adjudication entered by the juvenile court after a jury found that P.E. and J.E. (the children) were dependent and neglected. We affirm.

I. Background

¶ 2 In May 2024, the Larimer County Department of Human Services filed a petition in dependency or neglect alleging concerns about father's substance abuse and domestic violence between the parents. Five months later, the case closed via "informal adjustment" whereby the parties agreed that father and the children would reside with his sister for three months and the Department would conduct monthly check-ins. Less than one week later, the Department received a referral reporting concerns about father's substance use and a "violent" interaction with his sister in the children's presence. The Department then filed a new petition in dependency or neglect alleging neglect of the children, domestic violence, and substance abuse.

¶ 3 Father denied the allegations and requested a jury trial. About five months after the Department filed the new petition, the juvenile court held a four-day jury trial. The jury determined that

the Department had met its burden to establish that the children were dependent or neglected because (1) they lacked proper parental care through the actions or omissions of father; and (2) their environment was injurious to their welfare. *See* § 19-3-102(1)(b)-(c), C.R.S. 2025. Based on the jury's verdict, the juvenile court adjudicated the children dependent and neglected and adopted a treatment plan for father.

## II. The Indian Child Welfare Act (ICWA)

¶ 4 In his statement of ICWA compliance, father asserts that the dispositional order must be reversed because the juvenile court and the Department failed to comply with the due diligence provisions of Colorado's statute implementing ICWA. *See* § 19-1-126, C.R.S. 2024 (requiring compliance with federal ICWA statute).[1] We disagree that reversal is required.

---

[1] Section 19-1-126, C.R.S. 2024, was repealed effective August 6, 2025, and replaced with the Colorado Indian Child Welfare Act, §§ 19-1.2-101 to -132, C.R.S. 2025. Because section 19-1-126 was in effect at the time the juvenile court entered the dispositional order, we refer to that statute throughout the opinion.

### A. Applicable Law and Standard of Review

¶ 5    ICWA establishes "minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture." 25 U.S.C. § 1902. For ICWA to apply in a dependency or neglect proceeding, the case must involve an Indian child. *See People in Interest of A.G.-G.*, 899 P.2d 319, 321 (Colo. App. 1995). An "Indian child" is "any unmarried person . . . under age eighteen" who is either (a) "a member of an Indian tribe" or (b) "eligible for membership in an Indian tribe" and "the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4); § 19-1-103(83), C.R.S. 2024.

¶ 6    A mere assertion of Indian heritage, without more, is insufficient to give the juvenile court reason to know that the child is an Indian child and trigger the provisions of ICWA. *People in Interest of E.A.M. v. D.R.M.*, 2022 CO 42, ¶ 56. However, Colorado's ICWA statute places additional requirements upon a department when it has information that "the child may have Indian heritage." § 19-1-126(3). Under those circumstances, the court must direct the department to "exercise due diligence in gathering additional

3

information that would assist the court in determining whether there is reason to know that the child is an Indian child." *Id.*; *H.J.B. v. People in Interest of A-J.A.B.*, 2023 CO 48, ¶ 5.

### B.    Additional Background

¶ 7    Father reported that his maternal grandmother was a registered member of the Sioux tribe. He also completed an ICWA form stating that he and the children were not enrolled in a tribe and the children were not eligible for enrollment. In response to the juvenile court's inquiries at the initial shelter hearing, father provided two possible spellings for his grandmother's last name, but he was unable to provide her first name.

¶ 8    Based on the information disclosed by father, the juvenile court concluded that there was not enough evidence to find that ICWA applied but that there was sufficient evidence to establish a "reason to investigate." Consequently, the court ordered the Department to further investigate the child's ancestry and ordered father to complete an ICWA ancestry chart to aid the Department's investigation. Nothing in the record indicates that father completed the form.

¶ 9     At the dispositional hearing, the magistrate did not conduct an ICWA inquiry or ask the Department about the status of the investigation.  The dispositional order, signed by the magistrate, did not address ICWA and vested legal custody of the children with the Department for placement in the "least restrictive environment available outside of the home."  Father did not seek review of this order pursuant to section 19-1-108(5.5), C.R.S. 2025.

## C.     Analysis

¶ 10    Even assuming a parent can raise noncompliance with section 19-1-126(3) for the first time on appeal, and further assuming that the juvenile court erred by not inquiring about the Department's due diligence efforts at the dispositional hearing, *see* § 19-1-126(1)(a)(I)(A) (requiring the juvenile court to conduct ICWA inquiries during "emergency or voluntary or involuntary child-custody proceeding[s]"); *People in Interest of M.V.*, 2018 COA 163, ¶¶ 41-42 (concluding that the dispositional hearing constitutes a "child custody proceeding under ICWA"), *overruled on other grounds by*, *E.A.M.*, ¶ 56 & n.10, we conclude that any error was harmless.

¶ 11    Father does not assert — and the record does not suggest — that the children are Indian children as defined by ICWA.  First,

both parents confirmed that the children are not members of any tribe, and neither parent ever asserted that the children were eligible for membership. *See* 25 U.S.C. § 1903(4)(a). Second, both parents confirmed that they were not members of any tribe. And if neither parent is a member of a tribe, then the children could not be "the biological child[ren] of a member of an Indian tribe." *See* 25 U.S.C. § 1903(4)(b). Thus, any error in the juvenile court's failure to make due diligence findings is harmless because there is no reason to believe that the children are Indian children. *H.J.B.*, ¶¶ 64-65; *see also* C.R.C.P. 61 (noting that an appellate court must disregard any error "which does not affect the substantial rights of the parties").

## III.  Jury Instructions

¶ 12   Father's sole contention on appeal is that the juvenile court erred by declining to give the jury two of his tendered jury instructions. The first was based on the presumption from *Troxel v. Granville*, 530 U.S. 57 (2000). The second focused on father's right to refuse to cooperate with the Department. We discern no error.

## A.  Standard of Review

¶ 13    A juvenile court must correctly instruct the jury on the law applicable to a case, and if the juvenile court meets this obligation, it has broad discretion over the style and form of instructions. *People in Interest of J.G.*, 2016 CO 39, ¶ 33.  We review jury instructions de novo to determine whether, taken as a whole, they accurately informed the jury of the applicable law.  *Id.*  However, we review a court's decision to give or not give a particular instruction for an abuse of discretion.  *Id.*  A ruling on jury instructions is an abuse of discretion only when the ruling results in a misstatement of the law or is manifestly arbitrary, unreasonable, or unfair.  *Id.*

## B.  The Troxel Instruction

¶ 14    Father proposed an instruction stating that the jury "must presume that the . . . [p]arents' decisions for the children were made in the children's best interest" unless the jury concluded that the Department "presented evidence to overcome that presumption by a preponderance of the evidence."  Father cited *Troxel* and *People in Interest of M.H-K.*, 2018 COA 178, in support of this instruction.

7

¶ 15    The juvenile court excluded the instruction because it found it unhelpful, potentially confusing, and unnecessary in light of the other instructions addressing the Department's burden of proof.

¶ 16    While we agree that father's tendered instruction correctly stated the law, we nevertheless conclude that it duplicated other instructions and was therefore unnecessary.  The totality of the instructions given by the juvenile court — including the instructions that the claims in the petition must be proven by a preponderance of the evidence and that the Department had the burden of proof — properly informed the jury of the applicable law and complied with the statute.  *See* § 19-3-505(7)(a), C.R.S. 2025 (mandating that, before adjudicating a child dependent or neglected, the juvenile court must find that the allegations of the petition were supported "by a preponderance of the evidence").

¶ 17    Nevertheless, father asserts that the court erred by declining to give his proffered instruction because it "provided the necessary and correct context" to the jury regarding his "rights and obligations" following the introduction of evidence related to his prior dependency and neglect case.  But the existence of a prior case did not alter the burden of proof or elements for the jury to

8

consider when deciding if the children were dependent or neglected. *See J.G.,* ¶ 26 ("*Troxel* does not require modifying what the State must prove in dependency or neglect proceedings.").

¶ 18    Thus, because the proffered jury instructions accurately informed the jury of the law and the Department's burden of proof, we discern no error. *See id.* at ¶ 33.

### C.    Duty to Cooperate

¶ 19    Father also proposed an instruction stating that "[t]he law does not require a parent to participate with, or cooperate with, the Department of Human Services in their investigation of the allegations against the parent." The juvenile court rejected the instruction.

¶ 20    Citing *M.H-K.,* father asserts that the juvenile court erred by refusing to give the instruction because it correctly stated the law. But father's reliance on *M.H-K.* is misplaced. The issue in that case was whether mother's refusal to submit to *voluntary* drug testing was relevant in light of the fact that the court "had entered no orders" and, therefore, she had no obligation to do so. *M.H-K.,* ¶¶ 75, 80. But here, the Department presented evidence that father failed to submit to *court-ordered* drug testing or to follow the

*mandatory* rules for family time. Under the circumstances, we agree with the juvenile court that the tendered instruction would have been confusing. *See id.* at ¶ 69 n.5 (a parent's refusal to submit to court-ordered drug testing is objectively unreasonable and therefore relevant to whether the child is dependent or neglected); *see also People v. Lucero*, 985 P.2d 87, 92 (Colo. App. 1999) ("[I]nstructions that are . . . irrelevant, misleading, or confusing to the jury must be avoided.").

¶ 21 Because the juvenile court's rejection of father's proffered jury instruction did not result in a misstatement of the law and was not manifestly arbitrary, unreasonable, or unfair, we discern no abuse of discretion. *See J.G.,* ¶ 33.

## IV. Disposition

¶ 22 The judgment is affirmed.

JUDGE DUNN and JUDGE MOULTRIE concur.